UNITED STATES of America, Plaintiff–Appellee,

v.

Bobby Carrol COOK, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Bobby Carrol COOK, Defendant–Appellant.

Nos. 94–5827, 95–5160.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1995.

Decided Feb. 23, 1996.

---

**ARGUED:** Matthew Hall Fair, Elkins, West Virginia, for Appellant. Thomas Oliver Mucklow, Assistant United States Attorney, Wheeling, West Virginia, for Appellee. **ON BRIEF:** William D. Wilmoth, United States Attorney, Wheeling, West Virginia, for Appellee.

Before ERVIN and MOTZ, Circuit Judges, and WILLIAMS, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge DIANA GRIBBON MOTZ wrote the opinion, in which Judge ERVIN and Senior Judge WILLIAMS joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Bobby Carrol Cook appeals from his convictions and sentences for drug trafficking crimes. Cook's primary contention is that the district court erred in failing to instruct the jury that it was required to find that he *knew* that the person from whom he received drugs was a minor in order to convict him of violating 21 U.S.C. § 861(a)(3). Because § 861(a)(3) does not require that a recipient of illegal drugs know that his supplier is a minor, and because Cook's remaining arguments are also without merit, we affirm Cook's convictions and sentences.

### I.

On March 8, 1994, Trooper Robert Blair was conducting an undercover operation in Jefferson County, West Virginia. While Trooper Blair drove through the Fox Glen Subdivision, a station wagon passed his car.

As the vehicle passed, Trooper Blair indicated to a backseat passenger that he wanted to purchase some crack cocaine. The station wagon then backed up and Blair told the passenger that he was interested in buying a "fifty," meaning fifty dollars worth of crack.

The backseat passenger, later identified as Mason Huddleston, retrieved a Lifesaver Holes candy vial containing crack from his pocket and poured some of the drug into his hand. He passed the crack up to the station wagon's driver, later identified as defendant Cook, who then got out of the car and brought the crack over to Blair's car. When Blair insisted on examining the crack before giving Cook any money, Huddleston leaned out the backseat window of the station wagon, pointed a gun at the trooper, and told Cook, "go ahead partner, I've got him covered." Cook and Blair then concluded their exchange. Recording devices installed in the trooper's car videotaped and audiotaped the transaction between Blair and Cook; Huddleston's conduct, however, was not recorded because the station wagon was outside the range of the recording devices.

Shortly thereafter, police stopped Cook's station wagon and arrested him. Huddleston was no longer in the vehicle. During a pat-down search, police discovered a .32 caliber pistol in Cook's pocket, which Cook asserted was Huddleston's gun. After being advised of his rights, Cook offered to make a statement. In his statement, Cook confessed that he and Huddleston had driven to Fox Glen in order to sell crack. When asked how old Huddleston was, Cook replied, "[t]hey say he is sixteen, I think." Additionally, Cook conceded that he had seen Huddleston point the gun at the trooper, and surmised that Huddleston had done so in order to avoid "get[ting] ripped off." Cook further confessed that he and Huddleston had driven to Fox Glen to sell drugs on several other occasions, and that the most crack he had seen Huddleston carry was "[p]robably a candy vial full" on February 18, 1994.

Cook was charged with one count of distribution of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1); one count of receipt of crack cocaine from an individual under the age of eighteen, in violation of 21 U.S.C.

§ 861(a)(3); and one count of use/possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Cook testified at trial and denied much of what he had stated in his earlier confession to police. Specifically, he denied seeing Huddleston point the gun at Blair and testified that he thought Huddleston was older than eighteen years of age. To support the latter contention, Cook offered several defense witnesses who testified that Huddleston had told them he was twenty-two and that Huddleston looked and acted older than eighteen. After a two-day trial, a jury convicted Cook of all the charges brought against him.

In calculating Cook's sentence, the district court attributed to him the estimated amount of crack Huddleston carried in the candy vial on March 8, 1994; additionally, the court included, as relevant conduct, the estimated amount of crack contained in the full candy vial that Huddleston possessed on February 18, 1994. The trial court further enhanced Cook's sentence for obstructing justice based on its finding that he had testified falsely at trial.

## II.

■ Cook's primary contention is that the district court erred in its instructions to the jury regarding the predicate elements required to establish a violation of 21 U.S.C. § 861. That statute, which is designed to punish defendants who commit drug crimes involving persons under the age of eighteen, provides:

> It shall be unlawful for any person at least eighteen years of age to knowingly and intentionally—
>
> . . .
>
> (2) employ, hire, use, . . . a person under eighteen years of age to assist in avoiding detection or apprehension for any offense of this subchapter or subchapter II of this chapter by any Federal, State or local law enforcement official; or
>
> (3) receive a controlled substance from a person under 18 years of age, other than an immediate family member, in violation

of this subchapter or subchapter II of this chapter.

21 U.S.C. § 861(a)(2), (3). Maintaining that § 861(a)(3) should be read to include a requirement that a defendant know that the person from whom he receives drugs is under eighteen, Cook proposed that the district court instruct the jury that it could only convict him if it found that he *knew* Huddleston was younger than eighteen. The district court rejected Cook's reading of the statute and his proposed instruction. The court instead adopted the government's proposed instruction—that to convict under the statute "it is not necessary that the United States prove that the defendant knew or had knowledge of the juvenile's age at the time of the offense."

In arguing for its proposed instruction, the government relied primarily on then-Judge Ruth Bader Ginsburg's opinion for the District of Columbia Circuit in *United States v. Chin,* 981 F.2d 1275 (D.C.Cir.1992), *cert. denied,* 508 U.S. 923, 113 S.Ct. 2377, 124 L.Ed.2d 281 (1993). In *Chin,* the defendant's appeal centered on his contention that § 861(a)(2), § 861(a)(3)'s statutory neighbor, required the government to prove the defendant knew that the youth involved in his offense was a minor. Justice Ginsburg began her analysis in *Chin* by commenting that the statute was "not a model of meticulous drafting," and that the knowledge requirement concerning the minor's age could not be determined through examining the words of the statute alone. *Id.* at 1279. Nevertheless, citing the "imperfectly expressed," though "fairly implied," intent of Congress to protect minors from the drug trade, the *Chin* court held that the statute did not require the government to prove that the defendant knew that the person with whom he was dealing was a minor. *Id.* at 1280. The court reasoned that construing the statute in any other way would not make sense because it would "invite blindness by drug dealers to the age of youths they employ," and would place on the government the "often impossible burden of proving, beyond a reasonable doubt, that a defendant knew the youth [involved] was under eighteen." *Id.* Congress's implied intent in enacting the statute, to protect juveniles as a class, suggested that

"Congress meant to impose on the drug dealer the burden of inquiry and the risk of misjudgment." *Id.*

The *Chin* court noted two significant factors in its decision. First, the absence of a knowledge requirement concerning the minor's age did not "threaten[ ] to criminalize 'apparently innocent conduct.' " *Id.* (quoting *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985)). Second, "strict liability in this context" did not "threaten any protected conduct." *Id.* This is so because to sustain a conviction the government must prove that the defendant "knowingly" violated some aspect of the drug trafficking laws to trigger the strict liability of the statute.

*Chin* was preceded by similar decisions in other circuits, including *United States v. Williams,* 922 F.2d 737, 738–39 (11th Cir.) (interpreting same subsection of the statute, court held that the government need not prove defendant knew minor's age), *cert. denied,* 502 U.S. 892, 112 S.Ct. 258, 116 L.Ed.2d 212 (1991); *United States v. Valencia–Roldan,* 893 F.2d 1080, 1083 (9th Cir.) (same), *cert. denied,* 495 U.S. 935, 110 S.Ct. 2181, 109 L.Ed.2d 509 (1990); *United States v. Carter,* 854 F.2d 1102, 1108–09 (8th Cir. 1988) (same). Cook contends that these decisions are distinguishable because each involved § 861(a)(2), which, he asserts, has a significantly different "grammatical structure" than the subsection of the statute involved here, § 861(a)(3). That argument is meritless. Cook has not set forth the significant grammatical difference he perceives between the subsections and we can find none. Both use the adverb "knowingly" in relation to verbs preceding the phrase concerning the minor's age. Because the grammatical structures of these two subsections of the same statute are very similar, decisions interpreting § 861(a)(2) provide powerful analogous precedent in this case.

Cook's stronger argument is that the analysis in the cases interpreting § 861(a)(2) is no longer valid in light of the Supreme Court decision in *United States v. X–Citement Video, Inc.,* — U.S. —, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994). There, the Supreme Court interpreted a similarly phrased statute, 18 U.S.C. § 2252, as requiring knowledge of the minor's age. Section 2252 made it illegal for any person to "knowingly transport[ ] or ship[ ] ... any visual depiction, if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct." 18 U.S.C. § 2252. The Court acknowledged that the most logical grammatical reading of the statute would indicate that the adverb "knowingly" applied only to the verbs it precedes ("transport" and "ship") and did not extend to the phrase "use of a minor." *X–Citement Video,* — U.S. at —, 115 S.Ct. at 467. Nevertheless, the Court held that the statute required the government to prove that the defendant knew that the youths involved were minors.

The *X–Citement Video* Court set forth several reasons for its holding that the presumption of a knowledge, or scienter, requirement overcame the most grammatical reading of the statute. First, the shipping and transporting of magazines and film were not activities "generally subject to public regulation," and therefore persons charged under the statute were unlikely to realize that their conduct might be proscribed. *Id.* at — —, 115 S.Ct. at 468–69. Second, the statute provided harsh penalties, indicating that Congress intended defendants to have some form of "evil intent" in shipping the materials. *Id.* at —, 115 S.Ct. at 469. Third, clearly innocent conduct would violate the statute's plain language if a knowledge requirement concerning the minor's age did not exist. *Id.* at — – —, 115 S.Ct. at 467–68. Fourth, without a knowledge requirement the statute would impinge on protected conduct (the First Amendment right to free speech). *Id.* at —, 115 S.Ct. at 469. Fifth, in view of the unclear legislative history of the statute, a construction of the statute that was completely bereft of some element of scienter would raise serious Constitutional doubts. *Id.* at —, 115 S.Ct. at 472.

For all these reasons, the Court held that the statute required the government to prove that the defendant knew the youth involved was a minor. In so holding, the Court followed the teaching of earlier Supreme Court

cases that "the presumption in favor of a scienter requirement should apply to each of the statutory elements which criminalize otherwise innocent conduct." *Id.* at ——, 115 S.Ct. at 469; *see also Staples v. United States,* —— U.S. ——, ——, 114 S.Ct. 1793, 1797, 128 L.Ed.2d 608 (1994); *Liparota v. United States,* 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985); *Morissette v. United States,* 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952).

The rationale of *X–Citement Video* does not control the outcome of this case. First, the statute at issue here, § 861(a)(3), unlike § 2252 in *X–Citement Video,* applies to persons who should be well aware that their conduct is subject to public regulation, *i.e.,* those receiving illegal drugs. Second, although § 861(a)(3) provides harsh penalties, some "evil intent" (in knowingly receiving controlled substances) is incorporated within the statute. Third, examples of "wholly innocent conduct" that would fall afoul of this statute absent a knowledge requirement do not easily spring to mind. Fourth, the statute does not impinge on constitutionally protected conduct. Fifth, although the legislative history with regard to the knowledge requirement in § 861(a)(3) is as sparse as the legislative history to § 2252, the statute is not constitutionally suspect because it contains no scienter requirement; rather, even though the defendant is not required to know his supplier is a minor, he still must intend to receive illegal drugs. In sum, there is no reason to apply the presumption in favor of a knowledge requirement in this case to protect otherwise innocent conduct for the obvious reason that receiving illegal drugs is not otherwise innocent conduct. *See United States v. LaPorta,* 46 F.3d 152, 158 (2d Cir. 1994) (no proof required that defendant knew property was government property because "[a]rson is hardly otherwise innocent conduct") (quotation omitted).

Section 861(a)(3) more closely resembles other federal laws that "provide enhanced penalties or allow conviction for obviously antisocial conduct upon proof of a fact of which the defendant need not be aware." *United States v. Falu,* 776 F.2d 46, 50 (2d Cir.1985) (citing *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975)); *see also United States v. Holland,* 810 F.2d 1215, 1223–24 (D.C.Cir.) (schoolyard sentence enhancement requires proof of drug dealing but does not require proof that the defendant knew he was within 1000 feet of a school), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987); *United States v. Hamilton,* 456 F.2d 171, 172–73 (3d Cir.) (White Slave Traffic Act requires proof that defendant knowingly transported a person for immoral purposes, but does not require proof that defendant was aware the person transported was a minor), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972).

■ Contrary to Cook's suggestion, the rule of lenity has no application here because it would "undercut the unambiguous legislative design of the section." *Holland,* 810 F.2d at 1223 (citing *Falu,* 776 F.2d at 50). The unambiguous legislative design of § 861(a)(3) is to protect minors as a class from the dangers of the drug trade. Requiring the government to prove a defendant knew the age of the minors involved would undercut that legislative design. We agree with our sister circuits that such a knowledge requirement would merely encourage those involved in drug trafficking to blind themselves to the ages of the youths with whom they deal. *See, e.g., Chin,* 981 F.2d at 1280; *Williams,* 922 F.2d at 739.

In addition, although Congressional inaction is not very persuasive evidence, we note some support for a strict liability interpretation of the statute from Congress's failure to amend the statute in response to its judicial interpretation. In 1986, 1988, and 1990, when Congress amended this statute and its predecessor, 18 U.S.C. § 845, courts had already interpreted the drug trafficking provisions as implicating strict liability with regard to the minor's age. *See United States v. Carter,* 854 F.2d 1102, 1108–09 (8th Cir. 1988); *United States v. Pruitt,* 763 F.2d 1256, 1261–62 (11th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986). In the face of such decisions, Congress's failure to amend the statute provides some indication that the courts had correctly discerned legislative intent. *Cf. United*

*States v. Rutherford,* 442 U.S. 544, 554 n. 10, 99 S.Ct. 2470, 2476 n. 10, 61 L.Ed.2d 68 (1979) (Once "an agency's statutory construction has been 'fully brought to the attention of the public and the Congress,' and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has been correctly discerned.") (quoting *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 489, 60 S.Ct. 982, 989, 84 L.Ed. 1311 (1940)); *cf. also United States v. Langley,* 62 F.3d 602, 605 (4th Cir.1995) (en banc) (Congress is presumed to enact legislation with the knowledge of the interpretation that courts have given to an existing statute), *cert. denied,* —— U.S. ——, 116 S.Ct. 797, 133 L.Ed.2d 745 (1996).

Finally, our holding in this case is not inconsistent with two recent opinions of this court interpreting statutes that contained somewhat similar "knowledge" requirements. *See United States v. Forbes,* 64 F.3d 928 (4th Cir.1995); *United States v. Langley,* 62 F.3d 602 (4th Cir.1995) (en banc). Both *Forbes* and *Langley* are readily distinguishable from the case at hand because both involved statutes that criminalized "otherwise innocent conduct"—the purchase and possession of a firearm. In *Forbes,* a knowledge requirement was presumed because the "defendant must have knowledge of the fact or facts that convert this innocent act into a crime." *Forbes,* 64 F.3d at 932. In *Langley,* the presumption of a knowledge requirement was overcome because courts had long interpreted the predecessor statute as not requiring knowledge, and Congress, in enacting the new statute, had not shown a clear intent to change the well-settled law. *Langley,* 62 F.3d at 605–06; *see also United States v. Tomlinson,* 67 F.3d 508, 513–14 n. 9 (4th Cir.1995) (explaining *Langley* ). Neither holding is apposite because neither dealt with a statute similar to the one at issue here—one that criminalizes conduct that is *not* otherwise innocent.

In sum, because the most grammatical reading of § 861(a)(3) suggests that the knowledge requirement does not extend to the minor's age, because the presumption in favor of a knowledge requirement does not apply here where the statute criminalizes conduct that is not "otherwise innocent," and because requiring the government to prove knowledge of the minor's age would undercut the legislative design of the statute, we believe that the trial court correctly instructed the jury that the government was not required to prove Cook knew that Huddleston was a minor.

### III.

■ With regard to his conviction for violating 18 U.S.C. § 924(c)(1), prohibiting the use and carrying of a firearm during and in relation to a drug trafficking crime, Cook makes two arguments. First and principally, he asserts that there was insufficient evidence from which the jury could conclude that he knew that his cohort, Huddleston, used and carried a firearm during the drug transaction. Secondarily, Cook claims that the district court improperly failed to instruct the jury that it could not convict him of violating § 924(c) unless it found that he knew that Huddleston had used and carried a firearm during the crime. Fundamental to both arguments is Cook's claim that he was unaware that Huddleston possessed the firearm until after the drug transaction with Trooper Blair had been completed.

Even a cursory review of the record reveals that there was abundant evidence—much from Cook himself—demonstrating that Cook was aware of Huddleston's activities during the crime. Indeed, Cook confessed that he knew that Huddleston was carrying a weapon during the drug transaction and, in his oral, and subsequently written, signed confession, admitted that he had seen Huddleston point the gun at Trooper Blair. He further acknowledged that he knew Huddleston had done so to avoid getting "ripped off." Cook admitted to being aware that Huddleston usually carried a gun with him in his pocket during their drug deals. In addition to Cook's confession, Trooper Blair testified at trial that Cook had turned towards Huddleston when the latter pointed his gun at the officer and that Cook had moved so as not to be in the line of fire.

Although Cook testified at trial that his statements in his confession were "misunder-

stood," the jury was free to discredit Cook's trial testimony and credit his earlier confession, especially when it was supported by Trooper Blair's testimony. Thus, the evidence, when viewed in the light most favorable to the government, was clearly sufficient to support the conclusion that Cook knew that Huddleston was brandishing a gun *during* the drug transaction. (Cook does not argue that such "constructive use" of a firearm fails to support a § 924(c) conviction).

Furthermore, contrary to Cook's suggestion, the district court did not improperly instruct the jury with regard to § 924(c)'s knowledge requirement. The only instruction on § 924(c) that Cook included in the Joint Appendix submitted to this court, and so presumably the only instruction on this point with which he takes issue, is:

> The Defendant is charged in count 2 of the indictment with using a firearm during a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1). Title 18, United States Code, Section 924(c)(1) provides in part whoever during and in relation to any drug trafficking crime for which he may be prosecuted in a court of the United States knowingly uses or carries a firearm shall be guilty of a federal offense. Two essential elements are required to be proved in order to establish the offense charged in count 2.

The court went on to explain what these two elements were:

> First, that the defendant committed the crime charged in count 1.
>
> And, second, that during and in relation to the commission of the crime charged in count 1 the defendant knowingly used and carried a firearm.

The court also instructed:

> [T]he word "knowingly" as that term has been used from time to time in these instructions means that the act was done voluntarily and intentionally and not because of mistake or accident.

There is no indication in the record that Cook ever objected to these instructions. Indeed, although the transcript of the dialogue among court and counsel is not particularly easy to follow, as best we can discern there was no discussion at all as to the § 924(c) instruction. Assuming that Cook did object to the quoted instruction at trial, as he does now on appeal, his complaint is meritless. The quoted instruction simply tracked the statutory language. There was no error.

Nor does the Supreme Court's recent decision in *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), assist Cook. In *Bailey,* the Supreme Court restricted the scope of § 924(c)(1), ruling that to sustain a conviction under the statute, the government is required to prove a firearm was "actively employed" during the offense. *Id.* at ——, 116 S.Ct. at 509. The Court held that it was insufficient for the government merely to establish that a firearm was proximately placed and accessible to the defendant during the drug transaction. *Bailey* does not concern or address Cook's only argument concerning § 924(c)—that he was unaware that Huddleston had "used" a gun during the drug transaction with Trooper Blair. In this case the jury was presented with a choice between the government's evidence that Cook knew Huddleston pointed his gun at Blair or Cook's testimony that he was not so aware. Because the jury convicted Cook and thus necessarily accepted the government's evidence that he was aware that Huddleston had "used" the firearm, *Bailey*'s "active employment" requirement is satisfied.

In sum, there was sufficient evidence that Cook knew that his cohort, Huddleston, carried and used—indeed brandished—a firearm during the drug transaction with Trooper Blair and the complained of instruction was not improper.

## IV.

Cook next contends that the district court erred in calculating the amount of drugs attributable to him for sentencing purposes. He argues that the court erroneously relied on one statement he made concerning the amount of crack Huddleston possessed, and ignored a second statement he made that he maintains was more accurate. Additionally, Cook contends that it was error for the court to include the amount of crack Huddleston possessed on February 18th as "relevant con-

**604**

duct" for sentencing purposes. *See* U.S.S.G. 1B1.3(a)(2).

### A.

In his statement to police immediately after he was arrested, Cook confessed that Huddleston possessed a candy vial "half-way full of crack" on March 8th, and that he had seen Huddleston with a full candy vial of crack on February 18th. (Trooper Blair testified that the candy vial Huddleston carried appeared to be a Lifesaver Holes vial.) Cook further explained that the half-vial on March 8th contained "[p]robably a couple hundred dollars worth" of crack. Thus Cook asserts that he "indicated two ways to identify the amounts of cocaine base" at issue—one was "observational," a candy vial full, the other was "monetary," a "couple hundred dollars worth." He maintains the district court erred in relying on the "observational" rather than the "monetary" method in computing the amount of cocaine attributable to him.

The government presented evidence to the district court that, using a Lifesaver Holes vial for analysis, police calculated that a full candy vial could hold approximately 7.8 grams of crack. Accordingly, in the Presentence Investigation Report, 7.8 grams were attributed to Cook as the amount of crack that Huddleston possessed on February 18th. Police then calculated that the sale amount to Blair on March 8th, plus the half-vial of crack Huddleston possessed on that day, amounted to .24 grams (the sale amount) plus "2 to 3 grams" (the approximate remainder in the vial). At the sentencing hearing, the district court noted that the government had submitted inconsistent amounts. The court observed that if a whole vial contained 7.8 grams, a half-vial should contain more than the government's estimate of "2 to 3" grams plus the .24 gram sale amount. The government's explanation for the discrepancy was that the March 8th estimate for the half-vial was a "discount" of the proper amount due to the uncertain nature of the calculations. The trial court resolved the issue by accepting the government's estimate that the March 8th amount was 3 grams plus the .24 grams sold. The court then determined that the February 18th amount for a whole vial was 6.25

grams. Adding the amounts together, the trial court arrived at a total amount of nine and a half grams of crack attributable to Cook.

At sentencing the government need only prove the amounts involved by the preponderance of the evidence. *United States v. Gilliam,* 987 F.2d 1009, 1013 (4th Cir. 1993). We review the district court's findings under the clearly erroneous standard. *United States v. McDonald,* 61 F.3d 248, 255 (4th Cir.1995); *United States v. McManus,* 23 F.3d 878, 882 (4th Cir.1994). In cases such as this, "where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." *United States v. D'Anjou,* 16 F.3d 604, 614 (4th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 2754, 129 L.Ed.2d 871 (1994). The district court is afforded "broad discretion" as to "what information to credit" in making its calculations. *United States v. Falesbork,* 5 F.3d 715, 722 (4th Cir.1993).

Accordingly, it was within the district court's discretion to rely on Cook's statement in his confession as to the amount of crack he saw in Huddleston's candy vial (half-way full), rather than his more vague statement concerning the dollar value of the drugs involved. Additionally, we find no error in the court's acceptance and utilization of the lower "discounted" police estimate of the amount of crack contained in the half-vial on March 8th, and on a further discounted estimate for the crack contained in the full candy vial on February 18th. *Cf. United States v. Sepulveda,* 15 F.3d 1161, 1198 (1st Cir.1993) (when amounts are uncertain, court should "err on the side of caution"), *cert. denied,* — U.S. ——, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994). As we have previously observed, the "Sentencing Guidelines permit estimated amounts based on satisfactory evidence, and such estimates inherently possess a degree of uncertainty." *D'Anjou,* 16 F.3d at 614.

### B.

Turning to the issue of whether the district court should have included the amount of crack involved in the February

18th incident as "relevant conduct," Cook admitted in his confession that he had driven Huddleston to Fox Glen, the area of the arrest, "about three [other] times" in order to sell crack. Cook stated that he drove Huddleston because Huddleston "puts gas in the car." In response to a follow-up question concerning the largest amount of crack that he had seen Huddleston possess, Cook responded that he had seen Huddleston with a full candy vial on February 18th. Cook was then asked if Huddleston always carried a gun when "you all are dealing crack," to which Cook responded, "[t]he last couple times he had it. He usually keeps it in his pocket and keeps his hand on it."

Reviewing Cook's statement, we cannot conclude that the district court erred in including the February 18th amount of drugs as relevant conduct. Although the basis for this finding should have been more clearly set forth, *see United States v. Duarte*, 950 F.2d 1255, 1263 (7th Cir.1991) (trial court must set forth specific basis for its finding that other drug amounts were part of the same course of conduct), *cert. denied*, 506 U.S. 859, 113 S.Ct. 174, 121 L.Ed.2d 120 (1992), our review indicates that the preponderance of the evidence supports the district court's decision to include the February 18th amount as relevant conduct. *See United States v. Pinnick*, 47 F.3d 434, 438–39 (D.C.Cir.1995) (affirming sentence where the basis for the district court's relevant conduct finding was not "entirely clear" but the evidence supported the finding). Specifically, Cook confessed that he had driven Huddleston several times to deal drugs in Fox Glen, there was a temporal proximity to the two incidents, and Cook made the statement concerning the amount of crack Huddleston possessed on February 18th in the context of police questioning about his driving Huddleston to Fox Glen to sell crack. This satisfies the standard applied in *United States v. Mullins*, 971 F.2d 1138, 1144 (4th Cir.1992) ("significant elements to be evaluated are the similarity, regularity and the temporal proximity between the offense of conviction and the uncharged conduct"); *see also United States v. Roederer*, 11 F.3d 973, 977–80 (10th Cir.1993); *United States v. Santiago*, 906 F.2d 867, 872–73 (2d Cir.1990).

Accordingly, Cook's challenge to the amount of drugs the district court attributed to him for sentencing purposes is without merit.

## V.

Cook's final argument is that the district court erred in enhancing his sentence two levels for obstructing justice. He contends that the district court should not have found that his testimony at trial amounted to perjury, and therefore the court should not have assigned him the two-level increase mandated by § 3C1.1 of the Sentencing Guidelines.

In his confession, Cook admitted that he was aware that Huddleston carried a gun; that he knew Huddleston had pointed the gun at Trooper Blair during the drug transaction; and that he knew Huddleston was a minor. At trial, Cook denied these statements, contending that the police had "misinterpreted" what he had told them.

At the sentencing hearing, the district court, having observed the testimony, found by a preponderance of the evidence that Cook had "not testif[ied] truthfully at trial with regard to the actual drug transaction and also with regard to [Huddleston's] age and also with regard to the gun at the time of the transaction." The testimony at issue clearly related to material issues in the case and directly contradicted the statements in his confession.

In determining that a defendant has obstructed justice, it is preferable for the district court to make specific findings that the defendant testified "(1) falsely, (2) as to a material fact, and (3) willfully in order to obstruct justice, not merely inaccurately as the result of confusion or a faulty memory." *United States v. Thompson*, 962 F.2d 1069, 1071 (D.C.Cir.1992), *cert. denied*, 507 U.S. 974, 113 S.Ct. 1418, 122 L.Ed.2d 788 (1993). Although the district court did not fully articulate its analysis, its conclusion that Cook had not testified truthfully, and that his testimony was "strained" in relation to material facts about which he had already confessed, was sufficient to show that the court did find that Cook willfully obstructed justice. *Unit-*

*ed States v. Dunnigan,* 507 U.S. 87, 93–96, 113 S.Ct. 1111, 1116–17, 122 L.Ed.2d 445 (1993). The district court's finding in this case is similar to the one at issue in *Dunnigan.* There, the Supreme Court affirmed a sentence enhancement for obstructing justice where the district court's finding was that the defendant testified untruthfully as to material matters in an attempt to substantially affect the outcome of the case. *Id.* at 95–96, 113 S.Ct. at 1117. Similarly, in this case the district court found that Cook testified untruthfully with respect to material matters (the use of the firearm and Huddleston's age) in an attempt to deny his confession and sway the outcome of the case against him. Accordingly, the district court did not err in enhancing Cook's sentence for obstructing justice.

For the foregoing reasons, Cook's convictions and sentences are

*AFFIRMED.*