**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 98-4456

TENA C. GASTON,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
William B. Traxler, Jr., District Judge.
(CR-97-459)

Submitted: February 26, 1999

Decided: April 9, 1999

Before NIEMEYER, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jack B. Swerling, Columbia, South Carolina, for Appellant. J. Rene
Josey, United States Attorney, E. Jean Howard, Assistant United
States Attorney, Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Tena C. Gaston appeals from her conviction on one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (1994). Finding her claims meritless, we affirm.

Gaston first charges that the trial court erred by admitting the testimony of prosecution witness, Johnny Barry, because defense counsel received inadequate notice of the Government's intention to call this witness and because his testimony violated Rule 404(b) of the Federal Rules of Evidence. The Government first notified defense counsel that Barry was a prospective witness on October 6, 1997, during jury selection. Before commencement of the trial on the morning of October 10, the Government provided defense counsel with documentation of the substance of Barry's testimony, namely that Barry had purchased methamphetamine from Gaston before May 1996. Gaston argues that the short notice concerning Barry's testimony unfairly prejudiced her.

Under Fed. R. Evid. 404(b), the prosecution must give the defense reasonable notice in advance of trial of its intention to offer evidence of prior bad acts. Here, the Government did not learn about Barry until several days before the trial. The Government notified defense counsel about Barry on October 6. Barry provided no information to the Government when he first was interviewed on September 30; the Government then interviewed Barry the night before the trial and provided that information to defense counsel the morning of the trial. The trial court ordered the Government not to call Barry as a witness until the second week of the trial in order to give Gaston a chance to prepare for this witness. We find that under these circumstances Gaston was not prejudiced by delayed notice about the Government's intention to call Barry as a witness.

Gaston asserts that Barry's testimony was inadmissible because it was not relevant to the charged conspiracy. Gaston was charged with conspiracy to possess with intent to distribute methamphetamine from June 3, 1997, to June 6, 1997. Barry testified that he bought metham-

2

phetamine from Gaston six or eight times, usually in one-ounce quantities, for about a six month period ending in May 1996, often at Gaston's house. Gaston argues that the one-year gap between the conduct about which Barry testified and the conduct charged in the indictment rendered Barry's testimony irrelevant.

Evidence of other crimes is not admissible to prove bad character or criminal propensity. See Fed. R. Evid. 404(b). Such evidence is admissible, however, to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. This rule is one of inclusion, rather than exclusion. See United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996). Even if the evidence is relevant under Rule 404(b), it must be more probative than prejudicial. See Fed. R. Evid. 403. "The prejudice which the rule is designed to prevent is jury emotionalism or irrationality." United States v. Greenwood, 796 F.2d 49, 53 (4th Cir. 1986). This court reviews the admission of Rule 404(b) evidence for abuse of discretion.

Barry's testimony about his methamphetamine dealings with Gaston were relevant to the issues of Gaston's knowledge of the drug business and her knowledge of and intent to distribute methamphetamine. The court provided both a limiting instruction and a jury instruction to ameliorate any potential prejudice caused by Barry's testimony. Under these circumstances, we find that the district court did not abuse its discretion by admitting this evidence.

Next, Gaston contends that the district court erred by excluding the testimony of Kathy Hill, a witness whose testimony Gaston planned to use to impeach Barry. Specifically, Gaston planned to impeach Barry's testimony that he had never obtained methamphetamine from Sam Whitfield by having Hill testify about an incident in 1996 when she drove Barry somewhere to meet with Whitfield. Hill's proffered testimony indicated that Barry did not tell her he had drug dealings with Whitfield, but that she deduced that the relationship concerned drugs because she knew Whitfield "from the past."

Although a defendant may cross-examine a witness for impeachment purposes, including bias, we find that the district court did not abuse its discretion by disallowing Hill's testimony to impeach Barry. See Fed. R. Evid. 608(b). Cf. United States v. Ling, 581 F.2d 1118,

3

1120-21 (4th Cir. 1978) (where defendant is cross-examined to impeach his credibility regarding prior bad acts, examiner may not, over defendant's objections, introduce independent proof that his statements are false). Hill's testimony was proffered not to impeach Barry's testimony about his relationship with Gaston, but to impeach his testimony about his relationship with Whitfield, which was a collateral matter.

Gaston also challenges the criminal forfeiture of her undivided half interest in her land and home near Woodruff, South Carolina. It was from this home that she received a telephone call from Sammy Whitfield on May 28, 1997, to set up a June 4, 1997, delivery of one-half pound of methamphetamine, a June 4, 1997, telephone call to arrange another delivery to Whitfield, and subsequent calls on June 5, 1997, in anticipation of Whitfield's delivery of $21,400 towards the purchase of an additional pound of methamphetamine. Following Whitfield's delivery of the cash to Gaston on June 5, law enforcement officers executed a search warrant at her home and found Federal Express packaging like that used to deliver the drugs to Whitfield, the California address of the drug source, foil-wrapped packages of cash in $7500 increments, two ounces of methamphetamine, scales, and the $21,400 Whitfield gave to Gaston.

Citing civil in rem forfeiture cases establishing the standards for civil forfeitures, Gaston argues that the Government failed to establish a nexus between the forfeited property and the crime of conviction. However, civil in rem forfeiture standards do not apply to criminal in personam forfeitures, such as this one. See United States v. Wild, 47 F.3d 669, 674 (4th Cir. 1994).

Gaston also contends that the forfeiture of her home and land were not proportional to the crime of conviction. Because a criminal forfeiture ordered pursuant to 21 U.S.C. § 853(a) (1994) is an element of the sentence imposed following a defendant's conviction for substantive drug offenses, and therefore properly characterized as punishment, see Libretti v. United States, 516 U.S. 29, 38-39 (1995), our sole inquiry in analyzing whether the forfeiture is constitutionally excessive is whether the forfeiture "is grossly disproportional to the gravity of a defendant's offense." United States v. Bajakajian, 118 S.Ct. 2028, 2036 (1998); see Wild, 47 F.3d at 676 (stating that the

4

excessiveness inquiry "beckons a comparison of the value of the property being forfeited to the gravity of the offense committed by the defendant and the nature and extent of the defendant's activities").

The Government presented evidence linking Gaston and her home to the June 3 to June 6, 1997, drug conspiracy for which Gaston was convicted. The Government also presented evidence that Gaston was responsible for three to ten kilograms of methamphetamine. Based on Gaston's offense level of 36, and criminal history category I, Gaston faced fines of $20,000 to $200,000. See U.S. Sentencing Guidelines § 5E1.2(c)(3) (1997). The full value of Gaston's property before the partition was $240,000. We find that forfeiture of Gaston's home was not grossly disproportional to the gravity of her offense.

Finally, Gaston challenges the amount of drugs the district court attributed to her for sentencing purposes. We review for clear error a district court's factual finding of the relevant quantity of drugs at sentencing. See 18 U.S.C. § 3724(e) (1994); United States v. Fletcher, 74 F.3d 49, 55 (4th Cir. 1996).

Under the sentencing guidelines, a district court must make an independent resolution of the amount of drugs that can be attributed to a defendant whenever that amount is in dispute. See U.S. Sentencing Guidelines § 6A1.3(b). In a case such as this, "`[w]here . . . the amount [of drugs] seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance.'" United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994) (quoting U.S. Sentencing Guidelines § 2D1.1, comment. (n.12)). The sentencing guidelines do not demand certainty and precision; they demand that a court do the best that it can with the evidence in the record, erring on the side of caution. See United States v. Cook, 76 F.3d 596 604 (4th Cir. 1996); United States v. Uwaeme, 975 F.2d 1016, 1019 (4th Cir. 1992). Thus, we afford the district court broad discretion in making this estimate. See Cook, 76 F.3d at 604. The court may also include for sentencing purposes quantities of drugs that were part of the same course of conduct or the same common scheme or plan as the crime of conviction. See USSG § 1B.1.3(a)(2); United States v. Cousineau, 929 F.2d 64, 67 (2d Cir. 1991).

Sammy Whitfield testified that Gaston made two deliveries of one-half pound of methamphetamine to him and that he ordered another

5

pound of methamphetamine from her all within the dates of the conspiracy. He also testified that he had received one-half to one pound of methamphetamine from Gaston per month for eighteen months. The district court found Whitfield's testimony reliable and truthful and also concluded that the drug transactions between Whitfield and Gaston for the eighteen-month period prior to the charged conspiracy were part of the same course of conduct as the charged conspiracy or were part of a common scheme or plan. Conservatively calculating the amount of methamphetamine attributable to Gaston as one-half pound per month for eighteen months (nine pounds), plus two pounds for the June 5 and 6 deals, the Government attributed a total of eleven pounds of methamphetamine to Gaston. This converts to 4.9896 kilograms.

Relying on these numbers, the district court attributed to Gaston more than three but less than ten kilograms of methamphetamine. We conclude that these findings are not clearly erroneous.

For these reasons, we affirm Gaston's conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6