UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.                                                    No. 01-4231

MELVIN HAYTON,
  *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(CR-00-180)

Argued: May 9, 2002

Decided: June 6, 2002

Before WILKINS, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Marc Lanny Resnick, Washington, D.C., for Appellant.
John J. Frail, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Kasey Warner, United States Attorney, Steven I. Loew, Assistant United States Attorney, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Melvin Hayton received a 120-month sentence for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Hayton appeals the district court's two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 and the court's refusal to grant him credit for acceptance of responsibility under U.S.S.G. § 3E1.1. We affirm the sentence.

### I.

The events leading up to Hayton's conviction and sentence began on July 8, 2000, when two deputies from the Mingo County, West Virginia, Sheriff's Department, Deputy Nathan Glanden and Deputy Steve McAllister, went to Hayton's house to serve him with a domestic violence petition and a restraining order. Hayton was not home. Hayton's wife told the deputies that Hayton had left for his mother's house in his Ford Ranger truck. The officers found Hayton and his truck in his mother's driveway. Deputy Glanden served the papers on Hayton and advised him that he could not have any firearms. At that point Hayton's wife, who had followed the deputies, asked Hayton, "What did you do with the guns?" Hayton answered, "Don't worry about my guns." When Deputy Glanden asked Hayton if he had any firearms, Hayton responded that he had none. Deputy Glanden looked through a side window of Hayton's truck and saw the stock of a shotgun sticking out from the corner of a camouflage blanket. After walking to the other side of the truck and looking through another window, the deputy spotted more guns. According to Deputy Glanden, he asked Hayton for the keys to the truck, which Hayton gave him. The deputy found nine firearms in the truck. Mrs. Hayton then volunteered that Hayton was a convicted felon. After radioing their dispatcher for a criminal history check, the deputies seized the guns and arrested Hayton for state firearms violations. Hayton was released on bond.

Ten days later, on July 18, 2000, Deputy Glanden and Corporal Sidney Gilman arrested Hayton for domestic assault. After he was given *Miranda* warnings, Hayton gave a statement to Corporal Gilman that was taped. Hayton acknowledged on the tape that he had received and understood his *Miranda* rights. In the statement Hayton admitted that he owned the firearms recovered on July 8, 2000, and that he obtained most of the guns by trading game chickens for them or by buying them from people he knew. He further admitted that he had piled all of his guns into his truck and taken them to his mother's because his wife was "raising Cain" and because he knew he was not supposed to have any firearms. On November 14, 2000, Hayton was charged in a superseding federal indictment with being a felon in possession of nine firearms.

Hayton moved to suppress the firearms and his taped statement. At the suppression hearing, held on December 7, 2000, Hayton claimed among other things that when the officers searched his truck on July 8, he did not give them the keys or consent to the search; that he had not been read *Miranda* warnings before he made the statement on July 18 and that he had initialed a *Miranda* form without understanding it; that the firearms in the truck were not his; and that Corporal Gilman tricked him into admitting the guns were his by promising him that he would not be prosecuted if he confessed on tape.

The district court denied the motion to suppress, finding that Hayton had consented to the search of his truck and that Hayton had received and understood all *Miranda* warnings before making his July 18 confession. The court also found that the confession was not the result of duress or deceit: "It is suggested that the defendant was tricked into making the statement and had been given a promise by the officer that he would not be prosecuted beforehand, all of which statements on the part of the defendant the Court finds not credible." In short, the district court concluded that Hayton had testified falsely during his suppression hearing.

Hayton pled guilty to unlawful possession of nine firearms by a convicted felon on December 14, 2000. He acknowledged that the guns were his and that he had swapped game chickens for some, which is what he had said in his taped confession. On March 13, 2001, he was sentenced to 120 months in prison and three years of

supervised release. In imposing this sentence, the district court increased Hayton's offense level by two for obstruction of justice (testifying falsely at the suppression hearing), *see* U.S.S.G. § 3C1.1, and denied any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. The district court explained the obstruction of justice enhancement as follows:

> The Court finds that at the suppression hearing, the defendant did testify falsely in several respects. In particular, the defendant testified falsely that he had been tricked into making the taped statement that was taken by the officers on that occasion, and similarly he testified falsely in stating that he had been given a promise by the officer that he would not be prosecuted if he made the statement. And the Court found at the time of ruling on the motion to suppress, that the defendant's testimony given at that hearing was not credible, and consequently concluded to deny the motion to suppress.
>
> The Court similarly finds here that the defendant has, by a preponderance of the evidence, plainly impeded administration of justice in this case by thwarting the prosecution of the case at the motion to suppress hearing, and accordingly finds that the defendant has engaged in an obstruction of justice that merits a two level enhancement.

Hayton appeals his sentence.

## II.

Hayton first argues that the district court improperly enhanced his sentence pursuant to U.S.S.G. § 3C1.1. This guideline provides for a two-level enhancement for obstructing or impeding the administration of justice. The commentary lists perjury as an example of conduct that triggers this enhancement. U.S.S.G. § 3C1.1, cmt. n.4(b) (2001); *see also United States v. Dunnigan*, 507 U.S. 87, 93-95 (1993) (obstruction of justice enhancement proper when defendant commits perjury). We have held that § 3C1.1 applies to perjury committed at a suppression hearing. *United States v. Akinkoye*, 185 F.3d 192, 205 (4th Cir. 1999).

Hayton claims that his § 3C1.1 enhancement was improper because *Dunnigan* requires that the district court make specific findings with regard to each element of perjury as defined in 18 U.S.C. § 1621. Hayton is only partly correct. The *Dunnigan* Court did say that in determining what constitutes perjury the district court must rely on the definition of perjury provided by § 1621 and that "[a] witness testifying under oath or affirmation violates this statute if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Dunnigan*, 507 U.S. at 94.

However, while *Dunnigan* encourages the district court to separately address each of the three elements of perjury (falsity, materiality, and willfulness), it does not require that each of the elements be mentioned by name. Rather, it is enough if the court "specifically identif[ies] the perjurious statements," *Akinkoye*, 185 F.3d at 205, and "makes a finding of obstruction of, or impediment to, justice that encompasses all the factual predicates for a finding of perjury." *Dunnigan*, 507 U.S. at 95. Hayton maintains that the district court erred because it failed to mention or cover materiality or willfulness. Although this case presents a somewhat close question, we believe that the district court satisfied the *Dunnigan* requirements by making factual findings from which materiality and willfulness can be inferred.

We have held that a district court fails to satisfy *Dunnigan* when its findings are so bare that no inferences can be drawn about the essential elements of perjury. *See United States v. Stotts*, 113 F.3d 493, 497-98 (4th Cir. 1997) (concluding that *Dunnigan* standards were not met when district court merely said, [the defendant] falsely testified at trial."); *United States v. Smith*, 62 F.3d 641, 647 (4th Cir. 1995) (vacating § 3C1.1 enhancement because district court denied objections to the enhancement with no more than "All right. Well, I will deny the objection to the increase for obstruction of justice."). On the other hand, we have affirmed a § 3C1.1 enhancement when the "district court, having observed the testimony, found by a preponderance of the evidence that [the defendant] had 'not testif[ied] truthfully at trial with regard to the actual drug transaction and also with regard to [a companion's] age and also with regard to the gun at the time of the transaction.'" *United States v. Cook*, 76 F.3d 596, 605 (4th Cir.

1996). Although the district court in *Cook* did not specifically mention materiality and willfulness, we nevertheless held: "Although the district court did not fully articulate its analysis, its conclusion that [the defendant] had not testified truthfully, and that his testimony was 'strained' in relation to material facts about which he had already confessed, was sufficient to show that the court did find that [the defendant] willfully obstructed justice." *Id.* We also affirmed the § 3C1.1 enhancement in *Akinkoye* because the essential elements could be inferred from the district court's finding "that [the defendant] lied when he stated that he did not make any of the statements attributed to him, and that the issue of whether the statements were lawfully obtained 'was the whole hearing.'" *Akinkoye*, 185 F.3d at 205.

Here, the district court expressly found that Hayton had testified falsely in several respects during his suppression hearing. In particular, the court found that Hayton lied when he said an officer tricked him into confessing and that he lied when he said the officer promised that he would not be prosecuted if he made the taped confession. This false testimony is directly relevant to the question of whether Hayton's taped confession was admissible. And the taped confession, in which Hayton admitted owning the nine guns found in his truck, is material to his felon-in-possession charge. The court's finding that Hayton testified falsely about the voluntariness of his confession in an attempt to "thwart[ ] the prosecution of the case" is sufficient to show that the court found that Hayton willfully obstructed justice. The district court therefore did not err in imposing a two-level enhancement under § 3C1.1.*

### III.

Hayton next argues that the district court improperly denied him credit for acceptance of responsibility under U.S.S.G. § 3E1.1. Only in extraordinary circumstances may a defendant who is found to have obstructed justice receive credit for acceptance of responsibility.

*Although we affirm the § 3C1.1 enhancement, we note that it would have been better had the district court made more direct findings with regard to materiality and willfulness. *See Dunnigan*, 507 U.S. at 95 ("[I]t is preferable for a district court to address each element of the alleged perjury in a separate and clear finding.").

"Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, cmt. n.4 (2001). *See United States v. Murray*, 65 F.3d 1161, 1165-66 (4th Cir. 1995). Hayton has offered no reason why his case should be considered extraordinary. Consequently, the district court did not err in denying credit under § 3E1.1.

IV.

For the foregoing reasons, we affirm Hayton's sentence.

*AFFIRMED*