In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1441, 99-1654 & 99-1720

United States of America,

Plaintiff-Appellee,

v.

Eric L. Frazier, Jacoby Walker
and Michael Mason,

Defendants-Appellants.

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:97-CR-88--James T. Moody, Judge.

Argued January 13, 2000--Decided May 23, 2000

   Before Posner, Chief Judge, and Bauer and Rovner,
Circuit Judges.

   Bauer, Circuit Judge.  This is a consolidated
direct appeal by three defendants convicted of
various offenses stemming from a crack cocaine
conspiracy. The defendants raise numerous issues
on appeal. For the reasons stated below, we
affirm in part and reverse in part.

I.   Background.

   From approximately 1983 to 1997, Michael Mason
led a conspiracy to distribute powder cocaine and
crack cocaine in the Gary, Indiana area. On July
17, 1997, a federal grand jury returned an eight-
count indictment for conspiracy to possess with
intent to distribute cocaine and cocaine base and
related offenses against Mason, Jacoby Walker,
and Eric Frazier./1 They all pled not guilty. On
November 20, 1997, a third superseding indictment
was returned charging Mason with ten counts,
Walker with seven counts and Frazier with six
counts./2

   After the superseding indictment, Frazier
tendered his plea of guilty on January 6, 1998.
The plea agreement provided that in return for
his cooperation, the government would file a
5K1.1 departure motion for substantial
assistance, a 15 year cap on his sentence and the
dismissal of the other charges. On January 27,
1998, Frazier testified for the government
against Mason and Walker. On April 17, 1998, the

government filed a notice of its intention not to file the 5K1.1 motion and instead requested an enhancement for perjury and that Frazier not be granted acceptance of responsibility. Frazier objected and filed a motion to compel the government to file the 5K1.1 motion and an alternate motion to withdraw his guilty plea. Proceedings were held and the district court denied both motions. The court relieved the government from its duty to file the 5K1.1 motion and sentenced Frazier to life imprisonment. The court enhanced Frazier's sentence for obstruction of justice, pursuant to the Sentencing Guidelines section 3C1.1 and found that he had not accepted responsibility for the crime.

Mason and Walker went to trial./3 On January 30, 1998, after a five day jury trial, both Mason and Walker were found guilty on all counts. On March 12, 1999, the district court dismissed one of the firearms counts against both Mason and Walker and entered judgment on the verdicts.

Walker was sentenced to life imprisonment under 21 U.S.C. sec.sec. 841(a)(1) (distribution of crack cocaine), 846 (conspiracy to possess with intent to distribute crack cocaine) and 861(a)(1) (use of a minor to distribute crack cocaine). This sentence was to run concurrently with a ten-year sentence under 26 U.S.C. sec. 5861(d) for possessing an unregistered firearm. Additionally, the court imposed a thirty-year sentence to run consecutively for carrying a silencer-equipped gun "during and in relation to" the charged drug conspiracy under 18 U.S.C. sec. 941(c)(1).

The court arrived at that sentence after imposing a two-level enhancement for obstruction of justice under U.S.S.G. sec. 2D1.1 and a three-level enhancement for an aggravating role as a manager or supervisor of criminal activity under U.S.S.G. sec. 3B1.1(b). This raised Walker's base offense level from thirty-eight to an adjusted offense level of forty-three, which combined with a criminal history category of III, required a life sentence under the Guidelines.

Mason's base offense level was thirty-eight, reflecting the total quantity of drugs involved in the conspiracy. The court then added a two-level enhancement for obstruction of justice under U.S.S.G. sec. 3C1.1 and an additional four-level enhancement for his role as an organizer or leader of the conspiracy. A total offense level of forty-six, combined with a criminal history category of I, called for a life sentence plus the thirty years to run consecutively for carrying a silencer-equipped gun "during and in relation to" the charged drug conspiracy under 18 U.S.C. sec. 941(c)(1).

Mason and Walker raise several arguments on appeal. First, they argue that their convictions were based on improperly admitted hearsay testimony and evidence regarding the activities of John Allen and his organization. The government presented evidence that established that since 1996, John Allen supplied cocaine to Mason. Allen, who owned Elite Electronics/4 which supplied and serviced pagers, also provided Mason's organization with pagers. The pagers allowed callers to leave messages that would be sent by a computer at Elite Electronics to the customer's pager. Mason's girlfriend, Monica Linear, worked at Elite for several months transmitting messages to the pagers. Runners for Allen, Samuel Johnson and Anthony Franklin, delivered cocaine to Mason at either the Stony Island car lot operated by Mason or his house. Occasionally, Allen gave cocaine to Mason on credit.

Second, Mason and Walker argue insufficiency of the evidence with regard to the carrying of a pistol with a silencer during the commission of a drug transaction. Several witnesses testified to the use of guns in collection of drug debts including Frazier's testimony of hitting Little Vic with a gun and pulling a gun on Courtney Johnson. Ronald Radford, a former employee of the car lot and security guard, testified to purchasing guns for Mason and his organization.

After Mason's arrest Joe Torrence, a seventeen year old, hid the silencer in his dryer in the basement of his home at 26th and Tyler. Frazier then brought him an ounce of cocaine, which he put in the dryer and removed the silencer to his room where it remained until the Gary Police confiscated it a month later. The .22 caliber Colt semi-automatic was sent to the ATF laboratory. The silencer was found to be effective as a silencer as defined by federal statute. It was not registered.

Finally, Mason and Walker raise several arguments on the calculation of their sentences. Specifically that the court improperly enhanced their sentences for obstruction of justice. Walker also argues that the court incorrectly enhanced his sentence for finding that he was a manager/supervisor in the organization and that the court miscalculated his criminal history category.

Frazier appeals the district court's denial of his motion to compel the government to file a 5K1.1 departure motion for substantial assistance per his plea agreement. Frazier's plea agreement provided that, in exchange for his cooperation,

the government would file a sec. 5K1.1 departure motion and that the parties would agree to a sentencing cap of fifteen years. The plea agreement further provided:

ii. I further understand that this sentencing agreement is based on my continuing cooperation with the United States and my agreement to always provide truthful and complete information and testimony; I also understand that if I fail to provide complete, truthful and candid information and testimony as required by this plea agreement, the government will not be obligated to file the departure motion and I will not be allowed to withdraw my guilty plea; I further understand that the Court can then sentence me to any term of imprisonment with the applicable guideline range.

At the plea hearing the court discussed the agreement with Frazier, at which time the court inquired into his knowledge and understanding of the agreement. Including the following question and answer:

The Court:  Has anybody, including your lawyer, any lawyer for the government, any government agent or anybody else made any other or different promise or assurance to you of any kind in an effort to cause you to plead guilty to this crime of drug conspiracy that you're about to plead guilty to?

A:  No, sir.

  On January 27, 1998, Frazier then testified as a government witness. On April 17, 1998, the government filed a notice to disavow its obligation to file the 5K1.1 motion, requesting an enhancement for perjury and denial of acceptance of responsibility. Frazier objected and urged the government to file a sentencing memorandum noting the alleged perjury, which the government did on November 10, 1999. Frazier moved to strike the memorandum due to tardiness or in the alternative for a continuance. On November 12, 1999 the court granted the motion to strike but allowed the government to refile which it did the next day. The memorandum alleged perjury, specifically regarding Frazier's statement that he could get probation or immunity through his cooperation. Frazier then filed a motion to compel the government to file a sec. 5K1.1 motion and an alternate motion to withdraw his guilty plea. On January 6, 1999, a sentencing hearing was held.

  During the hearing, the government introduced a document attached to Mason's motion for new trial ("Mason Document"), which was signed by Frazier.

It was not signed under oath. In the document Frazier recanted his trial testimony, claiming he lied about the defendants because of the government's promise of leniency. At the sentencing hearing, Frazier claimed those statements were false. The judge made Frazier go through it paragraph by paragraph stating whether or not they were true or false.

The district court then denied Frazier's motion stating:

There is no doubt in this court's mind that this defendant did not live up to his end of the bargain that he made with the government. The testimony at trial that he has made promises other than what he told me the promises were when I took his plea, that in itself is sufficient to allow the government not to file it.

Therefore, the court will not compel the government to file the 5K1.1 motion.

The document that was submitted by Defendant Michael Mason, which is signed by the defendant, it may not be under oath, but it certainly is false representations to this court that certainly are material to the sentencing of Michael Mason, and certain portions of it he's admitted are false.

That in itself coupled with the other instance of what this court determines to be perjury in his testimony when he said that--at trial when he said that there were other promises made by the government, that coupled with this false representation amounts to obstruction of justice.

The alternative request to withdraw his plea was also denied and Frazier was sentenced to life imprisonment.

II.  Analysis

A.  Evidentiary Issues

Mason and Walker contend that the district court made repeated and prejudicial evidentiary rulings denying them a fair trial. Both argue that the court improperly admitted the hearsay testimony of Frazier pertaining to the operation of a crack house by Walker. Further, they contend that the court improperly admitted evidence concerning the activities of John Allen, which they claim was a separate conspiracy.

Decisions to admit evidence are reviewed for abuse of discretion. United States v. Dominguez, 992 F.2d 678, 680-681.

The district court did not abuse its

discretion, despite Mason and Walker's attempt to separate the Mason and Allen organizations, when it admitted the statements of members of the Allen organization. Because there were two different organizations, Mason and Walker argue there were two different conspiracies involved. The evidence regarding the Allen conspiracy, according to them, should not have been presented to the jury. The government, on the other hand, submits that Allen and Mason's organizations were part of the same conspiracy. The evidence presented at trial clearly linked these two organizations in a single conspiracy.

"Evidence of frequent and repeated transactions, especially when credit arrangements are made, can support a conspiracy conviction." United States v. Plescia, 48 F.3d 1452, 1460 (7th Cir. 1995). We have held that an ongoing relationship involving numerous purchases and the fronting of drugs indicates the existence of a conspiracy. United States v. Ferguson, 35 F.3d 327, 331 (7th Cir. 1994); United States v. Lechuga, 994 F.2d 346, 350 (7th Cir. 1993).
The government presented sufficient evidence to establish that Allen and Mason's organizations were linked and part of a single conspiracy. Beginning in 1996 until Mason's arrest in March 1997, Allen was Mason's source for drugs. Allen and his runners made frequent deliveries of large quantities of cocaine, usually two to six kilograms, to Mason. Occasionally, Allen would front the drugs to Mason. Allen's business, Elite Electronics, also supplied and serviced pagers for Mason's organization. And for a period of time, Elite employed Mason's girlfriend to transmit messages to the pagers. On March 14 DEA agents raided Greg Jones' condominium, who stored cocaine for Allen. The agents confiscated 31 kilograms of cocaine but let Jones leave. After the raid, Allen and Mason met on more than one occasion to determine how to handle Jones, concerned that he would cooperate with the authorities.

Because the statements by members of the Allen organization were made during and in furtherance of the conspiracy they were properly admitted pursuant to FRE 801(d)(2)(E). Coconspirators do not have to have contact with, or even know, all of the other conspirators. United States v. Goines, 988 F.2d 750, 759 (7th Cir. 1993) (quoting United States v. Marshall, 985 F.2d 901, 905 (7th Cir. 1993) (citation omitted)). Therefore, the fact that Allen's runners and Mason's employees did not know each other does not negate a single conspiracy.

Mason and Walker next argue that the court should have barred Frazier's hearsay testimony

regarding his knowledge of the crack houses. The government concedes that the statements were erroneously admitted, but argues that any error was harmless because the evidence against Walker was so overwhelming. The evidence included tape recordings and surveillance of Walker selling crack to the informant on two different occasions. Marlon Phillips testified that for one of those sales he provided the crack for Walker. Further, several other coconspirators identified Walker as their source for crack. Before Shannon Hemphill was allowed to sell drugs alone, Walker had to accompany him. Hemphill often delivered four and one half ounces of crack from Mason or Walker to others. Frazier's other testimony also implicated Walker's involvement in the conspiracy.

The evidence presented showed that members of Allen's organization delivered large quantities of cocaine to Mason. Testimony from several of Mason's people, including Frazier, Hemphill, and Marlon Phillips stated they received and sold cocaine for him. Further, the hearsay statements did not directly implicate Mason.

Beyond the hearsay, there was more than ample evidence in the record to support the convictions of Mason and Walker, and thus its admission was harmless. The limited prejudicial effect of the admission of the hearsay was outweighed by the cumulative effect of the other evidence already presented. United States v. Johnson, 127 F.3d 625, 631 (7th Cir. 1997); see United States v. Brown, 31 F.3d 484, 491 (7th Cir. 1994); United States v. Carter, 720 F.2d 941, 948 (7th Cir. 1983). Mason and Walker were not prejudiced by the court's error.

B.  Sufficiency of Evidence

Mason and Walker contend that the evidence was insufficient to support their convictions under 18 U.S.C. sec. 924(c) with respect to carrying a .22 caliber pistol with a silencer during a drug trafficking crime, specifically, the use of the pistol by Joseph Torrence when he received a quantity of crack from Frazier. The charge was based on coconspirator liability under the Pinkerton Doctrine.

Under Pinkerton, a coconspirator may be held criminally liable for the foreseeable overt acts of others in furtherance of a conspiracy. Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); United States v. Pazos, 993 F.2d 136, 141 (7th Cir. 1993).

Sufficiency of the evidence challenges face nearly insurmountable hurdles, and in making this

argument, Mason and Walker bear a heavy burden. United States v. Runnels, 93 F.3d 390, 394 (7th Cir. 1996); See United States v. Hickok, 77 F.3d (7th Cir. 1996). We consider the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. Id.; United States v. Strang, 80 F.3d 1214, 1219 (7th Cir. 1996).

The evidence at trial sufficiently established that a firearm was carried in furtherance of the drug conspiracy and in fact was an integral part of the conspiracy. Mason bragged to Hemphill about having the .22 caliber pistol with silencer. He offered it to John Allen's brother on the condition that it be returned. The pistol was passed among members of the organizations and used in retaliation against a person who had attacked one of the coconspirators. Frazier hit Little Vic with a firearm because of a drug debt. Moreover, the specific charge was directly related to the conspiracy and possession with intent to distribute cocaine. The evidence presented showed that Torrence, at the direction of the other coconspirators, held the firearm and a quantity of cocaine together. For these reasons, the district court properly found that sufficient evidence existed to support Mason and Walker's convictions for carrying a weapon during the commission of a crime.

C.   Sentencing

1.   Mason and Walker contend that the district court erred in enhancing their sentence under sec. 3C1.1 for obstruction of justice. The sentencing court's determination that the defendant obstructed justice is a finding of fact and is reviewed under the clearly erroneous standard on appeal. United States v. Brown, 900 F.2d 1098, 1101 (7th Cir. 1990). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. Id. Section 3C1.1 of the Sentencing Guidelines provides in pertinent part:

If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, . . . increase the offense level by 2 levels.

And the application notes further explain that:

4.   The following is a non-exhaustive list of examples of the types of conduct to which this adjustment applies:

  (b)   committing, suborning, or attempting to

suborn perjury;

6.  "Material" evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination.

USSG sec. 3C1.1.

   The Supreme Court in United States v. Dunnigan, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), addressed the constitutionality of obstruction of justice enhancements and held that the district court must make independent findings of fact that the defendant lied. We have upheld an obstruction of justice enhancement where the district judge evaluated the testimony of the defendant against the testimony of others and determined that the defendant's testimony lacked credibility. United States v. Pedigo, 12 F.3d 618, 629 (7th Cir. 1993).

   At the suppression hearing both Mason and Walker testified that they invoked their right to counsel and asked for an attorney. The interviewing agents, however, testified that each defendant signed written waivers of their right to remain silent after being fully advised of their rights. After listening to the testimony, the district court found that Mason and Walker lied under oath. Therefore, the obstruction of justice enhancement was not clearly erroneous. The district court believed the agents and determined that both Mason and Walker had lied under oath and therefore an obstruction of justice enhancement was properly made.

   2.  Walker argues that the district court erred in finding that he was a manager/supervisor under sec. 3B1.1(a), which resulted in a three-level increase to his base offense level. "A sentencing court's determination concerning a defendant's role in the offense is a finding of fact, subject to a clearly erroneous standard of review on appeal." United States v. Brown, 900 F.2d 1098, 1101 (7th Cir. 1990). A finding of fact will only be found erroneous if after reviewing all the evidence, the court is left "with a definite and firm conviction that a mistake has been committed." United States v. Herrera, 878 F.2d 997, 1000 (7th Cir. 1989). The district court must find that the evidence established the defendant's role by a preponderance of the evidence. United States v. Spillman, 924 F.2d 721, 723 (7th Cir. 1991).

   Section 3B1.1(b) of the sentencing guidelines provides that "if the defendant was a manager or supervisor (but not an organizer or leader) and

the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels." U.S.S.G. sec. 3B1.1. In making its sentencing determination, "[t]he district court must draw inferences from a variety of data, including the defendant's demeanor and information in the [presentence report], in order to reach [its] conclusion." United States v. Brown, 944 F.2d 1377, 1379 (7th Cir. 1991) (citation omitted). "The central purpose of sec. 3B1.1 is to punish a defendant for his relative responsibility within a criminal organization." United States v. Fones, 51 F.3d 663, 665 (7th Cir. 1995).

The evidence clearly supports the district court's finding that Walker had a high enough level of responsibility in the organization to justify the enhancement. Shannon Hemphill's testimony established that when he first began working for Mason he was accompanied by either Walker or Frazier on all runs. Marlon Phillips testified that Mason was the leader of the organization but that he only dealt with Walker or Frazier. Torrence stated that when he was arrested he had a .40 caliber semi-automatic handgun and 56 packets of crack cocaine which Walker had given him. Frazier testified that, at the time of his arrest, Torrence was working for Walker but that he also worked for others. Frazier further testified that Walker gave him the .22 semi-automatic pistol with silencer at the Stony Island car lot. Finally, Linear's testimony established that Walker operated a crack house which she learned about from Mason after the police raid. Because Mason was the leader of the organization and a coconspirator of Walker, she was in the position to obtain reliable information about the conspiracy. The district court, after listening to all of this testimony, did not err in finding Walker was a manager.

3. Walker's final argument is that the district court's calculation of his criminal history category was flawed. Walker argues that his 1992 prison sentence was not a "prior sentence" but part of the instant offense. Because Walker raises this issue for the first time on appeal, we will review it for plain error. United States v. Goudy, 78 F.3d 309, 315 (7th Cir. 1996). Walker must show that the error affects substantial rights. In other words, the error must have been prejudicial. United States v. Remsza, 77 F.3d 1039, 1044 (7th Cir. 1996). Put another way, the error "must have affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 736-37 (1993).

In United States v. Dillon, 905 F.2d 1034 (7th Cir. 1990), we decided that where two Guidelines ranges overlap and the sentence imposed would have been the same regardless of which range was applied, the technical dispute over which range to apply may be left unresolved. Id. at 1037. As long as it is reasonable to conclude that the same sentence would have been imposed regardless of the outcome of the dispute over which range to apply, we need not resolve the dispute. Id. at 1038.

The miscalculation of Walker's criminal history category does not survive the plain error test. While the government admits that the court miscalculated Walker's criminal history category, the sentence does not change. Because Walker's base offense level was forty-three, which carries a life sentence, the criminal history category is irrelevant. Therefore, the district court did not err in sentencing Walker.

D.  Government did not Violate the Anti-Bribery Statute

Mason argues that his conviction should be overturned because the government violated the anti-bribery statute when it offered leniency to a number of government witnesses. Because Mason failed to object during trial, we review for plain error. United States v. Hardamon, 188 F.3d 843, 848 (7th Cir. 1999).

Section 201(c)(2) of Title 18. United States Code, provides in pertinent part:

whoever directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court . . . . shall be fined under this title or imprisoned for not more than two years, or both.

Mason relies unsuccessfully on the tenth circuit case United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998). In Singleton, the court found that immunity or a lower sentence given in exchange for testimony to be a "thing of value," and thus a violation of the statute. This circuit has rejected the decision in Singleton, finding that the government does not violate the statute in exchanging truthful testimony for a reduction in sentence. Hardamon, 188 F.3d 843, 848 (7th Cir. 1999); United States v. Condon, 170 F.3d 687, 689 (7th Cir. 1999); United States v. Barrett, 505 F.2d 1091, 1100-03 (7th Cir. 1974). Mason's reliance on Singleton is further misplaced since the Tenth Circuit sitting en banc

has reconsidered its position and has vacated that opinion. United States v. Singleton, 165 F.3d 1297, 1298 (10th Cir. 1998). Mason has not provided us with any reason to reconsider and therefore there is no violation of the statute.

E.  Jury Instruction

Mason's final argument is that the court failed to advise the jury of the necessary elements of an offense under 21 U.S.C. sec. 861(a)(1) of employing a minor for the purpose of distributing cocaine. Mason contends that the jury should have been instructed that he had to know Torrence was a juvenile in order to be convicted. Again this issue is being raised for the first time on appeal, so we review it for plain error. Goudy, 78 F.3d 309, 315 (7th Cir. 1996).

Section 861 (a) for Title 21, United States Code, provides in pertinent part:

It shall be unlawful for any person at least eighteen years of age to knowingly and intentionally--

(1)  employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to violate any provision of this subchapter or subchapter II of this chapter;

Count 13 of the third superseding indictment charged Mason with violating sec. 861(a) in employing Torrence in the conspiracy. The evidence revealed that Torrence worked in Mason's crack houses before he reached the age of eighteen.

Other circuits have found that to require knowledge would undercut the legislative purpose. United States v. Cook, 76 F.3d 596, 601 (4th Cir. 1996). Further, requiring knowledge merely encourages leaders of organizations, like Mason, to blind themselves to the ages of the youths with whom they deal. Id. See, e.g., United States v. Chin, 981 F.2d 1275, 1280 (D.C. Cir. 1992); United States v. Williams, 922 F.2d 737, 738-39 (11th Cir. 1991); United States v. Valencia-Roldan, 893 F.2d 1080 (9th Cir. 1990); United States v. Carter, 854 F.2d 1102, 1108-09 (8th Cir. 1988). Williams explained that the government need only prove that the defendant knowingly employed a person in the commission of a drug offense and that the person employed was under eighteen when employed. Williams, at 739.

The court in Chin found it impossible that Congress would place the burden, beyond a reasonable doubt, on the government to prove that the drug dealer had known the youth he enticed

was under eighteen. Chin, at 1280. The intent of Congress in sec. 861(a) was to protect juveniles indicating an intent to place the burden on the drug dealer to know who is working for him. Id. We join the other circuits in finding that knowledge is not an element of sec. 861(a) and therefore Mason's argument fails.

F.  Frazier's Plea

Frazier argues that the court improperly denied his motion to compel the government to file a sec. 5K1.1 departure motion for substantial assistance or in the alternative to withdraw his plea. The government refused to file the sec. 5K1.1 departure motion on the grounds that Frazier lied on the stand regarding his deal with the government during Mason and Walker's trial. The government argues that this lie constituted a material breach of the plea agreement and therefore it was relieved of any obligation to file the motion. The district court found that Frazier did not live up to his end of the bargain and denied both of his motions.

Plea agreements are contracts and thus subject to contract law. United States v. Lezine, 166 F.3d 895, 901 (7th Cir. 1999). The government cannot unilaterally determine that the defendant has breached the plea agreement and refuse to uphold its end of the bargain. Id. An evidentiary hearing is required for the court to determine if a substantial breach of the plea agreement has occurred. Id. Because plea agreements are considered contracts, a breach must be proven by a preponderance of the evidence. United States v. Ataya, 864 F.2d 1324, 1337 (7th Cir. 1988); United States v. Verrusio, 803 F.3d 885 (7th Cir. 1986).

In this case the district court provided insufficient findings of fact to support its determination that Frazier substantially breached the plea agreement. The district court simply stated that "there was no doubt in his mind that Frazier did not live up to his end of the bargain." The court did not elaborate or provide sufficient findings for its reasoning, therefore we remand for a more complete explanation of the what facts the court found that led to his conclusion that Frazier "did not live up to his end of the bargain."

In all other respects, the decisions of the district court are affirmed. The case is remanded for the sole purpose of addressing the issues relating to Frazier's breach of the plea bargain.

Affirmed in part and reversed in part.

FOOTNOTES

/1 Shannon Hemphill and Marlon Phillips were also charged in the indictment, both pled guilty and testified for the government.

/2 Hemphill, Ramone Hemphill, and Mason's girlfriend, Monique Linear, were also charged in this indictment.

/3 Monique Linear was also a defendant in this trial.

/4 Elite was originally located in Hammond, Indiana but the business relocated to Merrillville, Indiana and became known as Elite Wireless.