**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Thomas L. MCCANTS, Defendant–Appellant.**

No. 03–2872.

United States Court of Appeals, Seventh Circuit.

Argued March 3, 2004.

Decided March 22, 2004.

John W. Vaudreuil, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Joseph L. Sommers, Madison, WI, for Defendant–Appellant.

Before POSNER; ROVNER, and EVANS, Circuit Judges.

## ORDER

Pursuant to a plea agreement, Thomas McCants pleaded guilty to possession of fifty grams or more of cocaine base with the intent to distribute, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii). The district court found that McCants had been a manager or supervisor within a small drug conspiracy, and increased his offense level by two under U.S.S.G. § 3B1.1(c). McCants appeals his sentence, and we affirm.

In early 2001 McCants met Fabius Tabor and Robert Whittaker, two cocaine dealers who shared customers and the use of a safe. Although the exact ownership of the safe is unclear, Tabor and Whittaker kept it at Whittaker's residence until Tabor was arrested in April 2002, at which point it was relocated to Tabor's girlfriend's home. That September, however, Tabor's relationship with the woman ended, and he asked Whittaker to reclaim possession of the safe. When Whittaker did so, the safe contained two bags of cocaine and approximately $5000 of what Whittaker admits was Tabor's money. Whittaker used that money to buy more cocaine for resale to his current customers, and continued to use the safe to store money and cocaine.

Apparently unhappy that Whittaker had taken his money without discussing it with him, Tabor contacted McCants and Whittaker by telephone from jail in November 2002. Tabor directed McCants to retrieve the safe from Whittaker's residence and ensure that Whittaker paid back the money he had removed. McCants and Whittaker moved the safe as instructed; from that point on, only McCants accessed the safe, although Whittaker also knew the combination. Whittaker continued to locate buyers for cocaine, but he had to request that McCants retrieve the drugs from the safe for him. After each sale Whittaker returned the proceeds to McCants, who placed them in the safe. According to Whittaker, McCants occasionally replenished the supply of cocaine in the safe, presumably using the proceeds of Whittaker's sales, although the record is unclear. McCants also asked Whittaker to rebag cocaine for resale, and on one occasion Whittaker converted the powder to crack at McCants's residence. Whittaker stated that McCants did not personally profit from Whittaker's drug sales but reserved the money to pay Whittaker's debt to Tabor.

McCants and Whittaker were indicted in January 2003 after police, executing a search warrant in an unrelated case, found the safe and the cocaine in McCants's home. In interviews with police, McCants eventually admitted that Tabor, a close friend, had asked him to keep the safe at his home and collect on Whittaker's debt to Tabor. McCants conceded that he had told Whittaker to "get rid of" the cocaine to satisfy his debt to Tabor, but emphasized that he did not arrange any sales personally. When McCants eventually pleaded guilty, the presentence report recommended a two-level upward adjustment for being a manager or supervisor of the drug conspiracy pursuant to U.S.S.G. § 3B1.1(c), based largely on McCants's

statements to police. McCants objected to this adjustment, arguing that he was merely a "middleman" ensuring that a debt was paid, and that he neither directed nor profited from the sale of drugs. After hearing testimony from Whittaker outlining the events described above, the district court rejected McCants's argument:

> Mr. McCants put himself in a position where he was telling Mr. Whittaker what to do. He was doling out the cocaine. He was collecting the money. He was getting Whittaker to help him bag it. He was keeping track of it. He was keeping possession of it. He was very much a supervisor at that period of time.

McCants was sentenced to 135 months in prison, the low end of the guideline range.

On appeal McCants's sole argument is that the upward adjustment under § 3B1.1 was clearly erroneous. He argues that he was a "middleman" who cannot be considered a supervisor or manager because he did not recruit Whittaker to the conspiracy, did not arrange or profit from Whittaker's transactions, and did not increase the volume of sales.

The determination of a defendant's role in the offense is a finding of fact, which we review for clear error. *United States v. Frazier*, 213 F.3d 409, 417 (7th Cir.2000). The question before us is not whether the district court could have reached a different conclusion, but whether the conclusion it did reach leaves "the definite and firm conviction that a mistake has been committed." *United States v. Gracia*, 272 F.3d 866, 876 (7th Cir.2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). The § 3B1.1 adjustment is designed to punish a defendant for his relatively greater responsibility within a criminal organization. *Frazier*, 213 F.3d at 417. In determining whether a defendant was a

manager or supervisor, a court should consider

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4); *Gracia*, 272 F.3d at 876–77. Merely being a distributor or middleman within a drug conspiracy does not warrant the adjustment unless the defendant exercised "some control" over others involved in the offense. *See United States v. Pagan*, 196 F.3d 884, 892–893 (7th Cir.1999).

After reviewing the record, we cannot say that it was clearly erroneous for the district court to conclude that McCants was more than just a middleman. The conclusion that he controlled Whittaker throughout their relationship was also not clearly erroneous. McCants not only supplied Whittaker with cocaine but actually mandated that he sell it and return the proceeds to the safe. He enforced Tabor's scheme to have the debt repaid, supervising Whittaker as he rebagged the cocaine and prepared it for resale. Although the government did not prove that he took a share of the drug proceeds for himself, McCants did assure that Whittaker returned the proceeds to the safe after each sale. Where a distributor is also involved in "[o]rchestrating or coordinating the activities of others," the adjustment is appropriate. *See United States v. Vargas*, 116 F.3d 195, 198 (7th Cir.1997). This includes activities that McCants undertook, like organizing the storage of drugs or directing deliveries. *See United States v. Adames*, 56 F.3d 737, 748–49 (7th Cir.

1995). Perhaps the best indication of McCants's control of Whittaker, however, is that Whittaker actually continued to sell drugs despite the fact that all of the proceeds were going to Tabor. McCants went well beyond merely distributing drugs, and his exercise of control over Whittaker was sufficient to warrant the upward adjustment under § 3B1.1.

Accordingly, the decision of the district court is AFFIRMED.