**UNITED STATES of America, Appellee**

v.

**Andrew P. CHIN, Appellant.**

**No. 91–3192.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 23, 1992.
Decided Dec. 29, 1992.

foreign nation have the right effectively to con-        trol...."

William J. Garber (appointed by the court), with whom Dennis M. Hart, Washington, DC, was on the brief, for appellant.

Elizabeth H. Danello, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III, and CeLillianne Green, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before EDWARDS, RUTH BADER GINSBURG, and WILLIAMS, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Andrew P. Chin was arrested at Union Station on March 3, 1987, after a fellow Amtrak train passenger stated that cocaine found on his person belonged to Chin.[1] On March 13, 1991, a jury found Chin guilty of possessing cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a), and of using a person under eighteen years of age to avoid detection for a drug offense, in violation of a provision of the Juvenile Drug Trafficking Act of 1986.[2] Chin challenges in this appeal the denial of his motion to suppress evidence, venue on the use of a minor count, testimony of the government's drug expert, and his conviction for use of a minor without proof that he knew the minor's age.[3] Finding Chin's arguments unpersuasive, we affirm the convictions.

## I. FACTS

On March 3, 1987, Amtrak police officer Robert Sauve, upon reviewing computer records of Amtrak passenger reservations, determined that a Miami–New York reservation on train No. 92 in the name of "A. Chin" showed six of the characteristics listed in the Amtrak police drug courier pro-

---

1. Chin's prosecution was long delayed because he failed to appear for trial as originally scheduled on July 15, 1987, and was not picked up on a bench warrant until October 1990.

2. Pub.L. No. 99–570, 100 Stat. 3207–10 (1986), originally codified at 21 U.S.C. § 845b(a)(2), now codified at 21 U.S.C. 861(a)(2). The jury found Chin not guilty on a separate count of using a juvenile to commit a drug offense, in violation of 21 U.S.C. § 845b(a)(1), now codified at 21 U.S.C. § 861(a)(1).

3. In his opening brief, Chin also contested the government's withholding of the juvenile record of the principal witness for the prosecution. In its answering brief, the government represented that the witness' only juvenile adjudication was on a New York misdemeanor charge, an adjudication that could not have been introduced at trial. *See* Fed.R.Evid. 609(a)(1), (d). Consequently, at oral argument, counsel for Chin withdrew this objection. Fair and efficient processing of this case would have been advanced had the government, *pretrial*, informed the defendant and the court that a diligent search turned up no potentially admissible juvenile record. We trust that in future cases, the government, if able to speak earlier, will not await the appeal to disclose such information.

file.[4] Sauve decided to try to interview this passenger during the train's brief stop at Union Station in Washington, D.C. Accompanied by Drug Enforcement Administration Agent Geraldine Sacco, Sauve boarded train No. 92, located Chin, and identified himself. During the encounter, Chin stated that he had gone to Florida to retrieve a coat he had mistakenly left there on March 1. Chin consented to a patdown and a search of his luggage; no evidence of crime was found. Sauve and Sacco then thanked Chin for his cooperation and departed.

Detective David Cassidy of the Metropolitan Police Department also went to Union Station to interview the suspect passenger on train No. 92. Cassidy and Amtrak police officer Ronald Ford waited on the platform as Sauve and Sacco boarded the train to conduct the interview. While on the platform, Cassidy and Ford observed a person who first exited the coach car of train No. 92, but then re-entered, apparently upon seeing another officer with a police dog. Cassidy and Ford boarded the train and approached that person at his seat. The officers learned that his name was Donnell Melvin. Melvin stated that he was travelling alone; he consented to a search by the officers, saying he had "nothing to hide." The search, however, revealed a packet of cocaine taped to Melvin's back. Cassidy and Ford arrested Melvin and escorted him from the train. While on the platform, Melvin told Ford and Cassidy that the drugs did not belong to him, but instead to "the Chinaman" whom the police had "just searched." When Cassidy asked him whether he "mean[t] a Mr. Chin," Melvin said "yes."

When Sauve and Sacco met Cassidy and Ford on the train platform, Cassidy and Ford told them of Melvin's statement implicating Chin. Sauve reboarded the train and again confronted Chin, this time telling Chin that he would "have to" leave the train while Melvin's allegations were investigated. Some time later, Chin was formally placed under arrest.

At trial, Donnell Melvin stated that he first met Andrew Chin in December of 1986; the two lived in the same building in the Bronx. On March 1, 1987, Chin asked Melvin to accompany him to Miami "to meet some girls." Later that day, Chin bought clothes for Melvin; Melvin, Chin, and a person named Bee then went to the airport. Chin bought Melvin a ticket, and the three flew down to Miami. They took a room in a Miami Ramada Inn. The next morning, Chin asked Melvin to carry some cocaine back as a "favor." Melvin first refused, but accepted the task when Chin offered him $300. Chin put the cocaine in a Ramada Inn bag, which he tied, then taped to Melvin's body. Later on March 2, Melvin, Chin, and Bee went to the train station. Chin bought Melvin a ticket; the two then sat separately for about three hours until their New York-bound train came. On the train, Melvin sat several rows in front of Chin based on his "guess" that Chin "didn't want to be noticed" with Melvin. Chin indicated that Melvin should not speak to him.

When the train arrived at Union Station, Melvin got off to make a phone call. Returning to his seat, Melvin heard unidentified voices talking to Chin. Melvin recounted that when Cassidy and Ford approached and began questioning him, he told them he was travelling alone in order "to cover up for Chin." After the cocaine was discovered, Melvin said, he told police that it belonged to "the guy that they already talked to."

## II. Discussion

### A. Probable Cause for Chin's Arrest

█ Chin was "seized" for Fourth Amendment purposes when Officer Sauve told him he "had to" leave the train. Be-

4. These characteristics, as officer Sauve described them at the suppression hearing, were: (1) the passenger was travelling from Miami, a "well known ... source city," to New York; (2) the reservation was made only four hours before departure, a "last-minute purchase" for such a long trip; (3) the passenger had paid cash for the ticket; (4) the passenger did not leave a call-back number; (5) the reservation was for one-way travel only; and (6) the passenger had refused a round-trip ticket even after being told that it would cost nothing extra.

cause we agree that probable cause for Chin's arrest existed at that point, we uphold the district court's denial of Chin's motion to suppress evidence (statements and travel documents) that the government proposed to use at trial.

Officer Sauve knew that fellow officers had discovered cocaine on another passenger, who had identified Chin as the owner. Because Melvin asserted direct personal knowledge of Chin's crime and had himself been caught red-handed, his identification of Chin could be viewed as weightier than a tip from a more distant informant. *See United States v. Gaviria*, 805 F.2d 1108, 1115 (2d Cir.1986) ("[A] criminal participant or witness to a crime 'need *not* be shown to have been previously reliable before the authorities may rely on his statements.'") (emphasis in original; citations omitted), *cert. denied sub nom. Contreras v. United States*, 481 U.S. 1031, 107 S.Ct. 1960, 95 L.Ed.2d 531 (1987); *see also United States v. Davis*, 617 F.2d 677, 693 (D.C.Cir.1979) (an admitted criminal participant has a strong incentive to tell the truth because "should he lie to the police," he "risks disfavor with the prosecution"), *cert. denied sub nom. Gelestino v. United States*, 445 U.S. 967, 100 S.Ct. 1659, 64 L.Ed.2d 244 (1980).[5] Melvin's initial claim that he was travelling alone, a bluff that failed, did not render unreliable statements Melvin made once the cocaine was discovered.

The information the police already possessed about Chin—the indicators from the drug courier profile and Chin's implausible statement about travelling to Miami to retrieve his coat—bolstered the credibility of Melvin's inculpating statement. In short, the "totality of the circumstances" added up to probable cause for the arrest of Chin, *see Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328–29, 76 L.Ed.2d 527 (1983), and the district court properly re-

fused to suppress evidence resulting from that arrest.

### B. *Venue*

Chin argues that venue for the "use-of-a-juvenile" charge did not lie in the District of Columbia because "all acts necessary to complete the offense took place in Miami, Florida" and because he did not perform any "action … that related to the use of a juvenile" within the District. Brief for Appellant at 24. However, the "use-of-a-juvenile" offense was a *continuing* one that persisted as long as Chin "used" Melvin to conceal Chin's drug crime.[6] It is well established that continuing offenses may be prosecuted in any district in which they "continued." *See* 18 U.S.C. § 3237(a); *Travis v. United States*, 364 U.S. 631, 634–35, 81 S.Ct. 358, 360–61, 5 L.Ed.2d 340 (1961). It is also established that, on appeal, the evidence relevant to venue is to be viewed in the light most favorable to the government. *See United States v. Lam Kwong–Wah*, 924 F.2d 298, 301 (D.C.Cir.1991). The evidence showed that Chin "used" Melvin to conceal the drugs in the District of Columbia as elsewhere on the train route north from Miami. Accordingly, we hold that venue for the "use-of-a-juvenile" charge was properly laid in the District of Columbia.

### C. *Expert Drug Testimony*

Officer David Stroud, the government's narcotics expert, was asked at trial why drug traffickers enlist juveniles. Stroud responded that

> it is a common belief in Washington, D.C., as well as other jurisdictions, that should a juvenile get arrested for a drug offense … virtually nothing will happen to him when he enters the court system…. Also, you can hire a juvenile for … maybe $200 or $300 a day, and he thinks he is doing something.

---

5. The charges against Melvin were later dropped, but evidently not until after Chin's arrest.

6. The trial forum question, given the silence of the "use-of-a-juvenile" statute on venue, must be

"determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson*, 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946).

Trial Transcript at 187–88 (March 12, 1991). Chin first contends that Stroud, a veteran of drug investigations in the District of Columbia, was not qualified to opine on the beliefs and practices of traffickers outside the D.C. area. Chin has not shown that drug trafficking methods in New York or Florida differ in any relevant respect from those in the District. *See United States v. Pugliese*, 712 F.2d 1574, 1581–82 (2d Cir. 1983) (testimony of drug expert with experience in New York City and Asia properly admitted where defendant failed to show conditions in Florida differed). Acceptance of Stroud's testimony plainly did not exceed the trial court's broad discretion in this area. *See United States v. Carswell*, 922 F.2d 876, 878 (D.C.Cir.1991) (qualification of experts is "largely committed to the discretion of the trial court") (citation omitted).

■ In accord with the commodious standard of Fed.R.Evid. 702, expert testimony on the *modus operandi* of criminals "is commonly admitted," particularly regarding the methods of drug dealers. *United States v. Dunn*, 846 F.2d 761, 763 (D.C.Cir.1988). Stroud's testimony did not overstep the line drawn in Fed.R.Evid. 704(b), which prohibits an expert from stating an opinion on whether the particular defendant did or did not have the mental state or condition constituting an element of the crime charged; Stroud's general observations never purported to describe Chin's own mental state.

## D. *Knowledge of Minor's Age*

■ Chin's final and most weighty claim of error relates to the absence of proof that he knew Donnell Melvin was under eighteen years of age.[7] Chin emphasizes that Melvin was seventeen years, eleven months old at the time of the offense. An expert in clinical psychology called by the defense, moreover, opined that Chin had severely limited intelligence; Chin suggests that this personal limitation made him peculiarly unable to perceive Melvin's juvenile status.

Chin also asserts that he used Melvin not because he was young, but because he was American. In these circumstances, Chin argues, due process precludes his conviction. To answer Chin's due process challenge resting on the peculiar circumstances of his case, we must first decide whether Congress intended to hold drug traffickers responsible for employing a juvenile without proof that the defendant knew the person "used" was underage. The statute provides:

It shall be unlawful for any person at least eighteen years of age to knowingly and intentionally—

. . . .

(2) employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to assist in avoiding detection or apprehension for any [listed federal drug offense] by any . . . law enforcement official[.]

21 U.S.C. § 845b(a), *recodified at* 21 U.S.C. § 861(a). This phrasing is not a model of meticulous drafting. One cannot tell from the words alone whether the person's juvenile status must be known and "intended," or whether it suffices that the act of using a person to avoid detection be "knowing[ ] and intentional[ ]."

Three circuits have construed "use-of-a-juvenile" provisions of the Juvenile Drug Trafficking Act of 1986. All three have concluded that the government is not required to prove that the defendant knew the person used was underage. *See United States v. Williams*, 922 F.2d 737, 738–39 (11th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 258, 116 L.Ed.2d 212 (1991); *United States v. Valencia–Roldan*, 893 F.2d 1080, 1083 (9th Cir.), *cert. denied*, 495 U.S. 935, 110 S.Ct. 2181, 109 L.Ed.2d 509 (1990); *United States v. Carter*, 854 F.2d 1102, 1108–09 (8th Cir.1988); *see also Outlaw v. United States*, 604 A.2d 873, 876 (D.C. 1992) (D.C.Code § 33–547(a), which prohibits enlistment of a minor to distribute a controlled substance, does not require

---

**7.** The government urged that Chin forfeited this argument by not raising it in the district court. We proceed to address Chin's contention, without deciding the waiver question, because a conviction obtained in the absence of any evidence on an essential element of a crime would amount to plain error in any case.

proof that the defendant knew the minor's age). In line with the protective purpose of the Juvenile Drug Trafficking Act of 1986, these decisions indicate that it would not make sense to construe the "use-of-a-juvenile" provisions to invite blindness by drug dealers to the age of youths they employ. *See, e.g., Valencia–Roldan,* 893 F.2d at 1083; *see also United States v. Curry,* 902 F.2d 912, 915–16 (11th Cir.) (noting purposes of Act), *cert. denied,* — U.S. —, 111 S.Ct. 588, 112 L.Ed.2d 592 (1990).

The pathmarking case relied on in *Williams, Valencia–Roldan,* and *Carter* is *United States v. Pruitt,* 763 F.2d 1256, 1261–62 (11th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 856, 88 L.Ed.2d 896 (1986). *Pruitt* construed 21 U.S.C. § 845 (since recodified at 21 U.S.C. § 859), a provision that enhances penalties for distribution of drugs to a person under twenty-one. That provision, *Pruitt* held, does not require proof of the defendant's knowledge of the distributee's age. The *Pruitt* court described as "a precise analogue" a provision of the White Slave Traffic Act, 18 U.S.C. § 2423, similarly intended to protect a vulnerable class defined by age. *See* 763 F.2d at 1262 (citing *United States v. Hamilton,* 456 F.2d 171, 172–73 (3d Cir.) (sentence enhancement for knowing transportation of persons under age eighteen for immoral purposes construed not to require proof defendant knew transportee was under eighteen; "knowingly" held to refer only to act of transportation), *cert. denied,* 406 U.S. 947, 92 S.Ct. 2051, 32 L.Ed.2d 335 (1972)).

We join our sister circuits in holding that a defendant's knowledge of the juvenile's age is not an element of the crime of using a juvenile to commit or conceal a drug offense. The rule of lenity, it is true, counsels restrictive reading when the scope of a criminal statute is unclear; that rule, however, "is not to be applied where to do so would conflict with the implied or expressed intent of Congress[.]" *Liparota v. United States,* 471 U.S. 419, 427, 105 S.Ct.

2084, 2089, 85 L.Ed.2d 434 (1985). We are satisfied that the requisite legislative intent, although imperfectly expressed, is fairly implied here. It is implausible that Congress would have placed on the prosecution the often impossible burden of proving, beyond a reasonable doubt, that a defendant knew the youth he enticed was under eighteen. The objective of protecting juveniles as a class strongly indicates that Congress meant to impose on the drug dealer the burden of inquiry and the risk of misjudgment. *Cf. United States v. Feola,* 420 U.S. 671, 678–79, 684, 95 S.Ct. 1255, 1260–61, 1263, 43 L.Ed.2d 541 (1975) (holding that assault-on-federal-officer statute does not require proof that defendant knew officer's federal status; Court relied in part on statute's design to protect federal officials as a class); *People v. Olsen,* 36 Cal.3d 638, 644 n. 10, 205 Cal.Rptr. 492, 494 n. 10, 685 P.2d 52, 54 n. 10 (1984) (noting that "overwhelming majority of jurisdictions" reject view that mistake as to age counts *even as defense* to statutory rape charge).

We have taken into account, in reaching our decision, that this is not an instance in which a broad interpretation of a statute threatens to criminalize "apparently innocent conduct." *Liparota,* 471 U.S. at 426, 105 S.Ct. at 2088. A conviction under 21 U.S.C. § 861(a)(2) can be had only upon proof that the person knowingly and intentionally made use of another for the purpose of concealing a violation of federal narcotics laws.[8] Nor could strict liability in this context threaten any protected conduct. *Cf. United States v. United States Dist. Court for Cent. Dist. of Cal.,* 858 F.2d 534, 538–43 (9th Cir.1988) (interpreting child pornography statute to include affirmative defense of reasonable mistake as to age to avert "chilling effect" on constitutionally protected expression not involving children).

■ Returning to Chin's due process objection, we now reject his argument, which

---

8. *See United States v. McDonald,* 877 F.2d 91, 93 (D.C.Cir.1989) (reversing 21 U.S.C. § 845b(a)(1) (now 21 U.S.C. § 861(a)(1)) conviction because no evidence had been introduced that defendant knowingly and intentionally used minor to commit drug offense, without reaching knowledge-of-age question).

reduces to one for special treatment. Age lines are by their nature bright, and we cannot entertain Chin's plea for an exception because Melvin was almost eighteen. Nor does the testimony about Chin's lack of intelligence indicate any "fundamental principle" in favor of the exemption he seeks. *Cf.* Brief for Appellant at 33 (Heading V). Knowledge and intent *are* required for the act of using another to commit or conceal a drug offense; and, we repeat, there is no question here of bringing the weight of the criminal law down on otherwise law-abiding conduct. *See United States v. Holland,* 810 F.2d 1215, 1223–24 (D.C.Cir.1987) (rejecting due process attack on sentence enhancement provision for drug distribution near schools in part because provision did not criminalize apparently innocent conduct), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987).

### Conclusion

For the reasons stated, the judgment of conviction is in all respects

*Affirmed.*