[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2001
THOMAS K. KAHN
CLERK

No. 00-10346

D. C. Docket No. 99-00249-CR-1-1-JOF

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD EUGENE MCCLAIN,

Defendant-Appellant.

No. 00-10452

D. C. Docket No. 99-00249-CR-3-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DESMOND ADRIAN TUCKER,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Georgia

**(May 31, 2001)**

Before TJOFLAT, BARKETT and MAGILL*, Circuit Judges.

TJOFLAT, Circuit Judge:

I.

A.

Between May and October of 1998, appellants Ronald Eugene McClain and Desmond Adrian Tucker conspired to create and cash over $80,000 in counterfeit checks drawn on legitimate bank accounts at several federally insured financial institutions. Appellants' modus operandi was to recruit young people, primarily females, to cash the counterfeit checks at various bank branches and business locations within and outside the Northern District of Georgia. Appellants helped their female recruits obtain false identification and transported them to the various locations where they negotiated the checks. After the checks were cashed, McClain and Tucker collected the money and each paid their respective recruits a fee for

*Honorable Frank J. Magill, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

2

their services.

In July 1998, appellants brought four female recruits on an extended trip to Macon, Georgia for the purpose of cashing counterfeit checks drawn on the bank account of Blue Bird Body Company. Tucker had recruited two of the four females: Jessica Garrett[1] and Jane Doe, a minor. According to Garrett's statement to police, Tucker asked Doe her age at the time he recruited her to cash the counterfeit checks, and Doe responded that she was twenty years old. In fact, Doe was only sixteen years old.

On or about July 28, 1998, Tucker drove Garrett and Doe to various Macon-area locations to cash counterfeit checks, while McClain drove the other two female recruits to banks and businesses in the same area. A Bibb County Sheriff's deputy arrested the two females who were traveling with McClain after they attempted to cash counterfeit checks at a Publix grocery store; McClain eluded capture.[2] Later that day, after cashing several counterfeit checks made out to "Taylor Baines,"

---

[1] Appellants provided Garrett with false birth certificates in the names "Catherine Stockborough"and "Taylor Baines," which Garrett used to obtain other forms of false identification.

[2] Although McClain was arrested by state authorities for violation of O.C.G.A. § 16-4-1 (Criminal Attempt) on August 31, 1998, it appears that he was arrested for the crimes at issue in the instant case on the basis of a federal warrant in May 1999.

3

Garrett, Doe, and Tucker were arrested by another deputy.[3]  A search of the vehicle driven by Tucker revealed $1,924 in currency and a firearm in the passenger compartment, and another $3,000 in the trunk.  Garrett told the FBI that Tucker always kept the firearm in the vehicle, either under or beside his seat, when he drove her to cash checks.  A search of the shrubbery near the vehicle revealed numerous counterfeit Blue Bird Body Company checks and false identification cards.

B.

On May 25, 1999, a Northern District of Georgia grand jury returned an indictment charging Tucker, McClain, and a co-conspirator named Quincy Lamar King[4] with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C.

---

[3] According to the indictment, 17 checks in the name "Taylor Baines" were cashed on or about July 28, 1998.  Sixteen of those checks were in the amount of $351.87; one was for $551.87.  All 17 of the checks were drawn on the account of Blue Bird Body Company at Citizens Bank.  Tucker and Garrett were charged with violation of O.C.G.A. § 16-9-1 (Forgery in the first degree); Doe was transported to a juvenile detention center.  While it is not apparent from the record whether state authorities charged Doe with any crime, it is clear that no federal charges were ever filed.  A federal warrant was issued for Tucker's arrest on May 25, 1999, and Tucker was taken into custody on the basis of that warrant on June 4, 1999.

[4] King, a co-organizer of the bank fraud scheme, was not alleged to have been in Macon on July 28, 1998 and is not a party to either appeal addressed herein.  King's case proceeded to trial and resulted in jury verdicts of guilty on December 9, 1999.

§ 371,[5] and multiple counts of bank fraud, in violation of 18 U.S.C. § 1344.[6] The

final count of the indictment charged McClain with an additional conspiracy to

commit bank fraud.[7] On October 5, 1999, McClain pled guilty to the two

---

[5] 18 U.S.C. § 371 provides:
If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

   If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

[6] 18 U.S.C. § 1344 provides:
   Whoever knowingly executes, or attempts to execute, a scheme or artifice -

> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets. securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

[7] Count One charged that from May 1998 through August 1998, McClain, King, and Tucker conspired to commit bank fraud by defrauding Colonial Bank, Citizens Bank, NationsBank, SunTrust Bank, and Wachovia Bank of Georgia to obtain money in violation of 18 U.S.C. §§ 1344 and 2, all in violation of 18 U.S.C. § 371.
   Counts Two through Seven charged that beginning in May 1998 and continuing through August 1998, McClain and King aided and abetted each other in a scheme to defraud SunTrust Bank and Wachovia Bank of Georgia to obtain money in violation of 18 U.S.C. §§ 1344 and 2.
   Counts Eight through Ten charged that beginning in May 1998 and continuing through August 1998, McClain and King aided and abetted each other in a scheme to defraud Colonial Bank, NationsBank, and SunTrust Bank to obtain money in violation of 18 U.S.C. §§ 1344 and 2.
   Counts Eleven through Fourteen charged that on or about June 20, 1998 through July 2, 1998, McClain, King, and Tucker aided and abetted each other in a scheme to defraud Colonial Bank, NationsBank, and SunTrust Bank to obtain money in violation of 18 U.S.C. §§ 1344 and 2.
   Count Fifteen charged that from October 15, 1998 through October 21, 1998, McClain

5

conspiracy counts, and the remaining counts against him were dismissed pursuant to the terms of his plea agreement. On October 15, 1999, Tucker pled guilty to one count of conspiracy, and the remaining charges were dismissed pursuant to the terms of his plea agreement.

The court sentenced McClain to 37 months' imprisonment on January 7, 2000, and then sentenced Tucker to 24 months' imprisonment on January 18, 2000.[8] Both McClain's and Tucker's sentences included a two-level enhancement pursuant to U.S.S.G. § 3B1.4 (2000) for using a minor (Doe) to commit a crime.[9] Tucker's sentence included an additional two-level enhancement pursuant to

---

conspired to commit bank fraud by defrauding NationsBank to obtain money in violation of 18 U.S.C. §§ 1344 and 2, all in violation of 18 U.S.C. § 371.

[8] Tucker was initially scheduled to be sentenced on December 10, 1999. His sentencing hearing was continued until January 7, 1999, however, because Tucker agreed to testify for the government at King's trial, which was scheduled for December 8, 1999 and was expected to last 2-3 days. In return for his testimony, Tucker expected to receive a downward departure in his sentence pursuant to U.S.S.G. § 5K1.1 (2000). While it is unclear from the record whether Tucker actually testified at King's trial, the Government ultimately informed the sentencing court that Tucker had not provided enough "substantial assistance" to merit a section 5K1.1 reduction. Tucker's sentencing hearing was held along with McClain's on January 7, 1999, but was once again continued (until January 18) when a question about an outstanding warrant for Tucker's arrest arose during the January 7 hearing.

[9] U.S.S.G. § 3B1.4. Using a Minor To Commit a Crime
If the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase by 2 levels.

6

U.S.S.G. § 2F1.1(b)(7)(B) (2000) for possession of a firearm in connection with the offense.[10]

McClain and Tucker filed timely notices of appeal under 18 U.S.C. § 3742(a)(2), asserting that their sentences were imposed as a result of an incorrect application of the sentencing guidelines. Specifically, they both argue that an enhancement for use of a minor to commit a crime requires scienter – an intent to use someone the defendant knows to be a minor to commit the offense. The parties stipulate that neither Tucker nor McClain knew Doe was a minor.[11] McClain further argues that he should not receive the two-level enhancement because he did not directly involve Doe in the bank fraud offense. While McClain and Tucker were working together to recruit young women for their scheme, the parties agree that it was Tucker who actually solicited Doe's assistance. Finally, Tucker argues that he should not have received a two-level enhancement for possession of a firearm in connection with the offense, because the firearm in his vehicle was

---

[10] U.S.S.G. § 2F1.1. Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States
. . . .
    (b)(7)  If the offense involved . . . (B) possession of a dangerous weapon (including a firearm) in connection with the offense, increase by 2 levels.

[11] According to Garrett, who was traveling in the car with Tucker and Doe on the day of their arrest, Doe first disclosed her true age when the vehicle was being pulled over by the police. Garrett told police that if Tucker had known Doe was a minor, he never would have recruited her for the check-cashing scheme. It is unclear, however, whether this statement was initially uttered by Tucker to Garrett, or merely volunteered by Garrett on Tucker's behalf.

7

unconnected with the fraud offense. We consider each of these arguments in turn.[12]

## II.

### A.

"The district court's interpretation of the sentencing guidelines is subject to de novo review on appeal, while its factual findings must be accepted unless clearly erroneous." United States v. Pompey, 17 F.3d 351, 353 (11th Cir. 1994); see also United States v. Anderson, 200 F.3d 1344, 1347 (11th Cir. 2000); 18 U.S.C. § 3742(e). Thus, we review de novo the district court's determinations that a section 3B1.4 enhancement does not require scienter and that section 3B1.4 may be applied to a co-conspirator who could reasonably have foreseen the use of a minor in furtherance of the criminal enterprise. We review for clear error the court's factual determinations that use of a minor in the check-cashing scheme was

---

[12] McClain additionally contends that his sentence violates Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Pretermitting the fact that McClain waited until oral argument to raise this issue, his argument is without merit. McClain concedes that use of a minor is not an element of the offense for which McClain was convicted. Rather, it is an instance of relevant conduct used to determine McClain's sentence under the Sentencing Guidelines. The law in this circuit clearly states that "Apprendi does not apply to relevant conduct under the Guidelines." United States v. Gallego, 247 F.3d 1191, 1201 (11th Cir. 2001).

8

reasonably foreseeable as to McClain, and that the firearm found in the vehicle driven by Tucker was possessed "in connection with the offense."

## B.

In the statute enabling U.S.S.G. § 3B1.4, Congress adopted the following language:

> SEC. 140008.  SOLICITATION OF MINOR TO COMMIT CRIME
> (a) Directive to Sentencing Commission –
> (1) The United States Sentencing Commission shall promulgate guidelines or amend existing guidelines to provide that a defendant . . . who has been convicted of an offense shall receive an appropriate sentence enhancement if the defendant involved a minor in the commission of the offense.
> (2) The Commission shall provide that the guideline enhancement . . . shall apply for any offense in relation to which the defendant has solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used or attempted to use any person less than 18 years of age with the intent that the minor would commit a Federal offense.

Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 140008(a), 108 Stat. 1796, 2033.  In response to this congressional directive, the Sentencing Commission drafted Amendment 527 to the Sentencing Guidelines,

9

which was enacted as U.S.S.G. § 3B1.4 ("Using a Minor to Commit a Crime") and became effective on November 1, 1995.[13]  See U.S.S.G. app. C (2000).

According to section 3B1.4, "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense," the district court must "increase [the defendant's base offense level] by 2 levels."  While appellants argue that section 3B1.4 requires scienter – a defendant's knowledge that the person assisting him in the offense is a minor – we cannot agree.

"The Sentencing Guidelines hav[e] the force and effect of law, [and] are to be construed as if they were a statute, giving the words used their common meaning, absent a clearly expressed manifestation of contrary intent."  United States v. Maria, 186 F.3d 65, 70 (2d Cir. 1999) (alterations and emphasis in original) (quotation omitted).  Thus, we are guided by the judicial interpretation of a federal criminal statute similar in language and purpose to U.S.S.G. § 3B1.4.  21 U.S.C. § 861(a), enacted as part of the Juvenile Drug Trafficking Act of 1986, provides:

---

[13] "In 1984, Congress created the Commission, charging it with 'establish[ing] sentencing policies and practices for the Federal criminal justice system.' 28 U.S.C. § 991 (1985).  Since this delegation of power was constitutional, sentencing guidelines promulgated by the Commission now bind the federal courts." United States v. Butler, 207 F.3d 839, 844 (6th Cir. 2000) (alteration in original).

It shall be unlawful for any person at least eighteen years of age to knowingly and intentionally –
. . . .
(2) employ, hire, use, persuade, induce, entice, or coerce, a person under eighteen years of age to assist in avoiding detection or apprehension for any [listed federal drug offense] by any . . . law enforcement official[.]

In United States v. Chin, 981 F.2d 1275 (D.C. Cir. 1992), a panel opinion authored by then-Judge Ruth Bader Ginsberg, the court was called upon to decide whether a conviction under section 861(a) requires proof that the defendant acted with knowledge of the minor's age. The court noted initially that the statute was "not a model of meticulous drafting," and that "[o]ne cannot tell from the words alone whether the person's juvenile status must be known and 'intended,' or whether it suffices that the act of using a person to avoid detection be 'knowing [] and intentional[]." Chin, 981 F.2d at 1279 (second and third alterations in original). In accordance with the "protective purpose" of the Juvenile Drug Trafficking Act, however, the court stated that "it would not make sense to construe the 'use-of-a-juvenile' provisions to invite blindness by drug dealers to the age of youths they employ." Id. at 1280. Rather, "[t]he objective of protecting juveniles as a class strongly indicates that Congress meant to impose on the drug dealer the burden of inquiry and the risk of misjudgment." Id.; accord United States v. Williams, 922 F.2d 737, 739 (11th Cir. 1991) (holding that 21 U.S.C. § 845(b) (recodified at 21

11

U.S.C. § 861(a)) does not contain a scienter requirement, as requiring knowledge of the minor's age "would . . . permit drug dealers to close their eyes as to the age of the minors who become part of the operation, without fear of reprisal") (quotation omitted). Thus, the court held that a defendant need not be aware of the minor's age to be convicted under section 861(a).

We see no reason why section 3B1.4 of the Sentencing Guidelines should be interpreted to give less protection to minors than similarly worded federal statutes, absent a showing of Congress's contrary intent. "[L]anguage in the Sentencing Guidelines is to be given its plain and ordinary meaning. Further, where the guidelines provide no indication as to a particular application[,] the Court looks to the language and purpose of the Sentencing Guidelines for instruction." Pompey, 17 F.3d at 354 (citations omitted). The unambiguous legislative design of section 3B1.4 is to protect minors as a class from being "solicited, procured, recruited, counseled, encouraged, trained, directed, commanded, intimidated, or otherwise used" to commit crime. Violent Crime Control and Law Enforcement Act of 1994 § 140008(a); see also U.S.S.G. § 3B1.4, cmt. n.1 (2000). The plain language of the section categorically imposes an enhanced penalty upon defendants who "used or attempted to use" a person under the age of eighteen to commit (or avoid detection of, or apprehension for) an offense. We find no qualifying language in section

3B1.4 reserving the enhancement for defendants who knew that the person drawn into their criminal activity was a minor.

As a policy matter, requiring the government to prove scienter at sentencing[14] would simply encourage defendants to close their eyes and ears to information about persons they employ in their criminal schemes.  The defendant's knowledge of a minor's age would be nearly impossible to prove, and would undoubtedly be the subject of lengthy "mini-trials."  Such application of section 3B1.4 would render the sentencing enhancement practically impotent, and would thereby frustrate the legislative intent behind its enactment.

Further, our interpretation of section 3B1.4 does not threaten to penalize otherwise innocent conduct, for defendants have no right to solicit or conspire with others (no matter what their ages) to commit crime.  Cf. Chin, 981 F.2d at 1280 (holding that a statute criminalizing the use of a minor to avoid apprehension for a federal drug offense, regardless of the defendant's knowledge of the minor's age, does not criminalize otherwise innocent conduct where the defendant may only be convicted upon a showing of intent to use another to conceal a violation of federal narcotics laws); United States v. Cook, 76 F.3d 596, 600 (4th Cir. 1996) (holding

---

[14] "[T]he presence or absence of a penalty sentencing factor is to be determined by the sentencing district judge, who need only find its existence by a preponderance of the evidence." United States v. Stone, 139 F.3d 822, 834 n.12 (11th Cir. 1998).

13

that a statute criminalizing receipt of a controlled substance from a minor, regardless of the defendant's knowledge of the minor's age, does not criminalize otherwise innocent conduct where the defendant may only be convicted upon a showing of intent to receive illegal drugs).  But cf. United States v. X-Citement Video, Inc., 513 U.S. 64, 71-73, 115 S. Ct. 464, 468-69, 130 L. Ed. 2d 372 (1994) (holding that a statute criminalizing the knowing transport of visual depictions of minors engaging in sexually explicit conduct requires knowledge of the minor's age, because strict liability application of the statute would proscribe otherwise legal conduct (shipping magazines) and impinge upon First Amendment rights).

Ideally, broad application of section 3B1.4 will deter adult criminals from committing crimes with even those persons who, although they are over the age of seventeen, appear to be minors.  We believe that a construction promoting this broad deterrent effect, rather than one encouraging willful blindness, effectuates Congress's intent in enacting the sentencing provision.  Therefore, we reject appellants' argument that scienter is required for application of U.S.S.G. § 3B1.4 and hold that the two-level enhancement was properly applied to Tucker.[15]

---

[15] Appellants argue that section 3B1.4 is ambiguous, and that "the rule of lenity dictates that the ambiguity be resolved in favor of the defendant."  We disagree.  "We only invoke the rule of lenity when, after considering the structure and purpose of a criminal statute, we are left with nothing more than a guess as to what Congress intended.  In this case, we see no 'grievous ambiguity' sufficient to require application of the rule of lenity."  United States v. Shugart, 176 F.3d 1373, 1376 (11th Cir. 1999) (citation omitted).

C.

We now turn to the question whether section 3B1.4 applies to the jointly

undertaken criminal activity of co-conspirators, such that it was properly applied to

McClain. McClain contends that we should look to United States v. Butler, 207

F.3d 839 (6th Cir. 2000), for our answer. In Butler, the Sixth Circuit held that

section 3B1.4 is inapplicable unless the defendant took affirmative steps to involve

a minor in a crime, rather than simply operating as an equal partner with the minor.

Butler, 207 F.3d at 847-48. The court feared that if section 3B1.4's requirement

that a defendant "use[] or attempt[] to use" a minor were satisfied by mere

partnership, then

> any defendant who partnered with a minor in a crime would be subject
> to a two-level enhancement, creating, in effect, a "strict-liability
> enhancement." However, this view conflicts with the notion that the
> enhancement is reserved for defendants who play a particular role in
> the offense. Indeed, if numerous adult defendants participated in a
> crime along with a minor, every single one of the adult defendants
> would be subject to the two-level enhancement, regardless of the roles
> they played in involving the minor in the crime. Such a result would
> ostensibly render the characterization of § 3B1.4 as a "role in the
> offense" adjustment a misnomer.

Id. at 848.

Pretermitting the fact that Butler is not on all fours with the instant case,[16]

---

[16] In Butler, the district court failed to find that the adult defendant "directed, commanded, intimidated, counseled, trained, procured, recruited, or solicited" a minor's participation in a bank robbery. Butler, 207 F.3d at 849. The court of appeals was therefore

15

we respectfully disagree with the Sixth Circuit's position on "strict-liability" application of section 3B1.4. The introductory commentary to Chapter Three, Part B, states that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included under § 1B1.3(a)(1)-(4), and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. ch.3, pt.B, introductory cmt. (2000). Section 1B1.3(a)(1)(B) provides that "in the case of jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy)," Chapter Three adjustments shall be determined on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Thus, it is erroneous to state that a strict liability section 3B1.4 adjustment would be applied to all adult defendants, "regardless of the roles they played in involving [a] minor in the crime," Butler, 207 F.3d at 848, because section 1B1.3(a)(1)(B) circumscribes the possible number of defendants

_____

faced with the question whether merely partnering with a minor in the commission of a federal crime is sufficient to warrant a section 3B1.4 adjustment. In the instant case, appellants do not dispute that Tucker actively recruited Doe to assist in the check-cashing scheme. Accordingly, we do not address the precise issue raised in Butler.

16

who may be subject to the adjustment. If use of a minor in furtherance of the jointly undertaken criminal activity was not foreseeable to certain defendants, those defendants will not receive the two-level enhancement. Any defendants who could have reasonably foreseen the use of a minor, however, are culpable under the plain language of sections 3B1.4 and 1B1.3(a)(1)(B).

Given the foregoing, we hold that the district court correctly interpreted section 3B1.4 as applicable to participants in a jointly undertaken criminal enterprise in which use of a minor was reasonably foreseeable. While McClain did not personally recruit Doe to assist in the check-cashing scheme, he and his co-conspirators were in the practice of recruiting young females and providing them with counterfeit checks and false identification. Indeed, the district court found that McClain was a "leader" of the conspiracy, U.S.S.G. § 3B1.1(a), while Tucker was only a "supervisor," U.S.S.G. § 3B1.1(b), who followed McClain's instructions. Accordingly, the district court's finding that Doe's recruitment was reasonably foreseeable to McClain "because [the defendants] were recruiting all kinds of young folks" was not clearly erroneous, and the court correctly applied the two-level enhancement to McClain's sentence.

D.

17

Finally, we turn to the question whether the district court's finding that Tucker possessed a firearm "in connection with" the fraud offense was clearly erroneous. We conclude that it was not. Tucker was supervising a lucrative counterfeit check-cashing scheme, and was thus responsible for large amounts of cash. The vehicle driven by Tucker contained $4,924 in currency, along with numerous counterfeit Blue Bird Body Company payroll checks and false identification cards. Tucker was relatively unfamiliar with the young recruits he was sending into banks and grocery stores to negotiate sizeable payroll checks; it is certainly reasonable to infer that Tucker carried the firearm to prevent a "rip-off." This inference is supported by Garrett's awareness of the firearm in the vehicle, and her statement that Tucker brought it along whenever he drove her to cash checks. Under the totality of the circumstances, the district court's determination that Tucker possessed a firearm "in connection with" the fraud offense was not clearly erroneous. Cf. United States v. Matos-Rodriguez, 188 F.3d 1300, 1309 (11th Cir. 1999) (holding that a defendant who "possessed [a] pistol to prevent theft [of counterfeit money] during a close, face-to-face, hand-to-hand encounter with a person he apparently did not know well" possessed a firearm "in connection with" the offense). Thus, the two-level enhancement pursuant to U.S.S.G. § 2F1.1(b)(7)(B) was properly applied to Tucker's sentence.

18

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

BARKETT, Circuit Judge, concurring specially:

I join the Court's opinion. I write only to emphasize the need for a case by case analysis in applying section 3B1.4. I also believe that United States v. Butler, 207 F.3d 839 (6th Cir. 2000) supports our holding today. Butler requires "affirmative use" of a minor. See id. at 848. In this case, it is clear that a member of the conspiracy "affirmatively used" a minor. Butler does not answer the further question of whether other members of the conspiracy can be held responsible for this use. In answering this question, the majority opinion concludes that "[i]f use of a minor in furtherance of the jointly undertaken criminal activity was not foreseeable to certain defendants, those defendants will not receive the two-level enhancement." Thus, I do not see much distinction between this approach and that of Butler as it may relate to co-conspirators. Section 3B1.4 was properly applied to McClain in this case since the record indicated he was directly, if not personally, involved in a co-conspirator's solicitation, recruitment, and use of a minor in implementing his criminal scheme. McClain organized the bank fraud

19

and played a leadership role in the conspiracy, including supervising Tucker's practice of recruiting specifically young females to negotiate counterfeit checks. In this particular instance, McClain supervised Tucker's recruitment of a minor to cash the fraudulent checks and, on the day of his arrest, McClain had traveled with Tucker, the minor, and three additional young females to Macon, Georgia, to oversee the commission of the crime. I believe Butler supports our holding, therefore, that where evidence suggests the defendant did not personally involve a minor in a conspiracy to commit crime, proper application of section 3B1.4 is dependent upon whether the defendant nonetheless played a broader affirmative role in the minor's solicitation since the use of a minor was a reasonably foreseeable act of co-conspirators in furtherance of the jointly undertaken criminal activity.